EVERETT VERNACCINI and DOROTHY VERNACCINI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vernaccini v. Commissioner
Docket No. 3826-72.
United States Tax Court
T.C. Memo 1974-66; 1974 Tax Ct. Memo LEXIS 255; 33 T.C.M. (CCH) 321; T.C.M. (RIA) 74066; March 18, 1974, Filed. Gerald Martin Kane, for the petitioners. Howard L. Williams, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1966 and 1967 in the amounts of $2,513.95 and $397.91, respectively. *259 Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following: (1) Whether petitioners are entitled under the provisions of section 404(a), I.R.C. 1954, [1] to deduct the amount of $1,250 in the calendar year 1966 as a contribution to a qualified pension plan; (2) Whether petitioners are entitled to deduct the amounts of $4,780 and $1,834 in the calendar years 1966 and 1967, respectively, as business expenses. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Everett and Dorothy Vernaccini, are husband and wife. At the time of the filing of their petition in this case they resided at Brandywine, Maryland. They filed joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue, Baltimore, Maryland. Everett Vernaccini, hereinafter referred to as petitioner, purchased 505.525 shares of Fund of America, Inc., a mutual fund administered by Investors Planning Corporation of America, *260 on August 31, 1966, for $5,000. In March 1967 petitioner purchased approximately 400 shares of Fund of America, Inc., for $5,000. Petitioner purchased all such shares in reliance on the representations of a mutual fund salesman that such a purchase would fund a qualified "Keogh" plan for him. Petitioner would not have purchased the shares except for these representations. In the latter part of 1967, petitioner assigned his mutual fund shares as collateral to secure a loan to him by the Bank of Brandywine. Subsequently, the Bank of Brandywine at petitioner's request sold enough of the pledged shares to pay off the outstanding loan. In 1971, the Bank of Brandywine at the direction of the petitioner sold the remainder of the petitioner's shares and delivered the proceeds to him. Petitioner claimed on his 1966 return as a deduction the amount of $1,250 as payment to a pension plan. Respondent in his notice of deficiency disallowed this claimed deduction of $1,250 "representing the cost of two $5,000 Funds of America certificates or securities, * * * because it has not been shown that the payments were to be made pursuant to a written qualified plan" under section 401. *261 Petitioner was a self-employed real estate salesman during the calendar years 1966 and 1967, selling real estate in the Bahama Islands on behalf of an Arlington County, Virginia subsidiary of the Bahama Sales Corporation. During 1966 petitioner paid for some travel expenses in connection with his business. These expenses included some plane fares for himself and prospective customers to the Bahama Islands and living expenses while in the Bahamas.Petitioner claimed the amount of $4,780 as a business expense deduction on his Federal income tax return for the calendar year 1966 for the costs of these trips and for travel between Washington, D.C. and Pittsburgh where some of his prospective customers lived. Petitioner has misplaced, lost or thrown away all of his records for 1966 except part of his retained copy of his 1966 Federal income tax return. This portion of his retained copy of his return does not show the itemization of the claimed business expenses of $4,780. Petitioner's original Federal income tax return for 1966 which was filed with the Internal Revenue Service has been lost. During 1967 petitioner paid for some travel, lodging and entertainment expenses and he *262 claimed the amount of $1,834 as a business expense deduction on his Federal income tax return for the calendar year 1967. The following is a list of these claimed expenses shown on petitioner's Federal income tax return for 1967: Business - Bahamas Land Deals Plane fares to Bahamas
$762.45
Lodging
227.68
Auto rentals, food, entertainment
819.57
Stationery, postage
25.00
$1,834.41 [sic]
During 1967 in connection with his business, petitioner at his expense made some automobile and airplane trips to Western Pennsylvania and some airplane trips to the Bahama Islands. On the trips to the Bahamas he took clients for the purpose of selling them real estate located there. On August 28, 1967, petitioner purchased at a total cost of $599.90 four round trip tickets for himself and three clients, Jerry Colona, James Cherocci, and Mario Brighentti, for travel on National Airlines between Washington, D.C. and Freeport, Grand Bahama Island. These tickets were used by petitioner and his clients on September 6 and 10, 1967, for travel to and from the Bahamas, respectively. While on this business trip petitioner paid the amount of $219.68 to the Bahamian *263 Kings Inn, Freeport, Grand Bahama, for lodging for himself and his three clients. On December 6, 1967, petitioner purchased at a cost of $36.96 a round trip ticket for himself for travel on Northwest Orient Airlines between Washington, D.C. and Pittsburgh. This ticket was used by petitioner for travel to Pittsburgh on December 7, 1967, and for return to Washington, D.C. on December 8, 1967. Petitioner took this trip for the purpose of getting together with prospective clients and arranging for them to accompany him on a trip to the Bahamas in order to attempt to sell them real estate. Petitioner had American Express receipts for some other purchases of airplane tickets but these receipts do not show when, if ever, the tickets which were purchased were used and petitioner had no records to show whether these tickets were used and, if so, by whom. The only records petitioner had to support his claimed deduction for food and entertainment expenses in 1967 were two American Express receipts and monthly statements showing payments in the amounts of $10.80 and $9.94 on August 25 and 26, 1967, respectively, to the Royal Arms Restaurant, Hyattsville, Maryland. Petitioner did not *264 keep a business diary for either of the years 1966 or 1967. Respondent in his notice of deficiency to petitioner disallowed in their entirety the claimed deductions for business expenses for the calendar years 1966 and 1967 "because it has not been established that any portion of such amount constitutes an ordinary and necessary business expense or was expended for the purpose designated." OPINION Respondent takes the position that since petitioner had no definite written plan under section 401 in existence during 1966, he is not entitled to the claimed deduction for $1,250 as a pension plan payment. Petitioner concedes that he had no written plan but contends that the deduction in the amount of $1,250, representing part of the cost of the mutual funds purchased in 1966 and 1967, should be allowed since he made the purchases in reliance on the representation of the mutual fund salesman that the payment would fund a pension plan which was qualified under section 401. Petitioner argues that the Government is estopped from denying the claimed deduction since the mutual fund salesman, who represented to him that he had a qulified plan, was an agent of the Federal Government *265 because he was a "licensee" of the Federal Government's regulatory agency, the Securities Exchange Commission. Petitioner argues that the salesman-agent made fraudulent misrepresentations to him concerning the qualification of his pension plan under section 401, and that he, in good faith, relied on these misrepresentations to his detriment. Although petitioner's pleadings are not adequate to properly raise the affirmative defense of estoppel, respondent has made no objection to our considering this issue on its merits. In our view petitioner's contention is without merit. Assuming the mutual fund salesman was a registered broker-dealer with the Securities and Exchange Commission, which the record does not show, petitioner has cited no authority that because of this fact the salesman is an agent of the Federal Government. Even if in some remote manner the salesman might be considered to be an agent of the Federal Government, due to his registration, "[it] is a settle principle of law that the United States is not bound by the unauthorized acts of its agents, that it is not estopped to assert the lack of authority as a defense, and that persons dealing with an agent of *266 the government must take notice of the limitations of his authority." Bornstein v. United States, 345 F.2d 558, 562 (Ct.Cl., 1965). Petitioner has not shown that the alleged salesman-agent had any delegation of authority by the Federal Government to represent that a pension plan was a qualified plan under section 401.Accordingly, we hold that the Commissioner is not estopped from denying to petitioner a deduction in 1966 for the cost or the partial cost of the mutual fund shares he purchased in 1966 and 1967. Section 404(a)[2] permits a deduction in the taxable year when paid for contributions paid by a self-employed person such as petitioner to or under a qualified stock bonus, pension, profit-sharing, or annuity plan, subject to limitations as to the amounts deductible in any year. [3]
*267 Section 1.404(e)-1(a), Income Tax Regs., provides: The Self-Employed Individuals Tax Retirement Act of 1962 (76 Stat. 809) permits certain self-employed individuals to be treated as employees for purposes of pension, annuity, and profit-sharing plans included in paragraphs (1), (2), or (3) of section 404(a). Therefore, for taxable years of an employer beginning after December 31, 1962, employer contributions to qualified plans on behalf of self-employed individuals are deductible under section 404 * * *. (Emphasis supplied.) A qualification requirement for a plan covering a self-employed individual who is an owner-employee, such as the petitioner under the facts here, [4] is that the plan "must be a definite written program and arrangement setting forth all provisions essential for qualification at the time such plan is established." (Emphasis supplied.) Section 1.401-12(b) (2), Income Tax Regs. The validity of this regulation was upheld by this Court in Nelson H. Jones, 51 T.C. 651, 655-656 (1969). *268 Since petitioner had no written plan in the year 1966, any contribution he made pursuant to a pension plan was not made to a qualified plan and therefore is not deductible. We conclude that in 1966 petitioner is not entitled to a deduction for any part of his purchase of mutual fund shares in 1966 or 1967. Respondent concedes on brief that petitioner is entitled to deduct as business expenses in 1967 the amount of $819.58 composed of the four round trip tickets to the Bahamas which petitioner purchased for $599.90 and the $219.68 he spent in 1967 on lodging in the Bahamas on that trip. Petitioner had the same form of memorandum showing an expenditure and the business purpose of the expenditure for the $36.96 he spent in 1967 for a trip to Pittsburgh on December 7 and return on December 8. Therefore petitioner has established within the provision of sections 162 and 274 that he is entitled to deduct as business expenses for 1967 the amount of $856.54. Petitioner testified that he spent additional amounts on travel and entertainment for business purposes in 1967 and that he spent substantial amounts for such purposes in 1966. Petitioner recognizes that he does not have the *269 records to substantitate these expenditures under section 274, but argues that we should allow him some deduction under the authority of Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930), since the recordkeeping requirements of section 274 are unconstitutional under the 13th amendment to the United States Constitution, prohibiting slavery and involuntary servitude, and violates Title 42, U.S.C., section 1994, [5] prohibiting peonage. In his brief petitioner aruges in the alternative that a denial *270 of his claimed deductions is a violation of (1) Title 42, U.S.C., section 1983, [6] granting a civil action to a person denied his civil rights; (2) article 1, section 8, clause 3 of the United States Constitution, guaranteeing freedom to travel throughout the United States; and (3) the 5th and 14th amendments to the United States Constitution. Section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 274(d), [7] which specifically deals with the deductibility of travel and enterntainment expenses, requires that these expenses to be deductible *271 under section 162 must be substantiated. This Court has consistently refused to allow any deduction for travel and entertainment expenses for years to which the provisions of section 274 apply unless the expenditures were substantiated in accordance with the provisions of section 274 and the income tax regulations issued pursuant thereto. William F. Sanford, 50 T.C. 823 (1968), aff'd 412 F.2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969); Delores Bussabarger, 52 T.C. 819, 827-829 (1969); George W. Randall, 56 T.C. 869 (1971). *272 The record is clear that petitioner has not substantiated any of his claimed travel and entertainment expenses in 1966 and any amount of such expenses, except for $856.54, in 1967 in accordance with section 274(d) and respondent's regulations thereunder. Under our consistent holdings petitioner is not entitled to deduct any of the amounts which he has failed to substantiate in accordance with the provisions or section 274(d). Petitioner aruges that our decisions upholding the provisions of section 274 are erroneous since the recordkeeping requirements of section 274 violate (1) the provisions of the 13th amendment of the United States Constitution in that they amount to involuntary servitude, (2) the provisions of the Federal statutes abolishing peonage, (3) the statute granting a right of action to a person deprived of his civil rights, and (4) apparently that these requirements are contrary to the provisions of the 5th and 14th amendments to the Constitution. Section 274 merely places a limitation on the deductibility of certain expenses. It is well settled that "[whether] and to what extent deductions shall be allowed depends upon legislative grace; and only as there is *273 clear provision therefor can any particular deduction be allowed." New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435 (1934). "Unquestionably Congress has power to condition, limit, or deny deductions from gross income in order to arrive at the net that it chooses to tax." Helvering v. Independent Life Ins Co., 292 U.S. 371 (1934). Since it is within the power of Congress to place limitations on the deductibility of any item for computing taxable income, a recordkeeping limitation does not violate any constitutional provisions or any law against peonage or protecting an individual's rights. The recordkeeping requirements generally imposed by the Internal Revenue Code have been held not to be violative of the 13th amendment. Kasey v. Commissioner, 457 F.2d 369 (C.A. 9, 1972), affirming 54 T.C. 1642 (1970). Petitioner's argument that the provisions of section 274 are discriminatory since they are as a practical matter applicable only to businessmen who are required to travel and to entertain customers is equally invalid. Congress in the exercise of its taxing power may classify and select taxpayers for differing treatment under *274 the tax laws. Unless the classification is so arbitrary as to have no reasonable basis to justify it and produces a gross and patent inequality among the resulting different classes of taxpayers, it does not violate due process under the 5th and 14th amendments. Brushaber v. Union Pacific Railroad Co., 240 U.S. 1 (1916); John A. Bayless, 61 T.C. 394 (1973). We sustain respondent's disallowance of petitioner's claimed deduction for business expenses in its entirety for the calendar year 1966 and in the amount of $977.87 for the calendar year 1967. Decision will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended, unless other indicated. ↩
2. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES" TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: (1) Pension trusts. - In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), in an amount determined as follows: * * * (2) Employees' Annuities. - In the taxable year when paid, in an amount determined in accordance with paragraph (1), if the contributions are paid toward the purchase of retirement annuities, or retirement annuities and medical benefits as described in section 401(h), and such purchase is a part of a plan which meets the requirements of section 401 (a) (3), (4), (5), (6), (7), and (8), and, if applicable, the requirements of section 401(a) (9) and (10) and of section 401(d) (other than paragraph (1)), and if refunds of premiums, if any, are applied within the current taxable year or next succeeding taxable year towards the purchase of such retirement annuities, or such retirement annuities and medical benefits. (3) Stock bonus and profit-sharing trusts. - (A) Limits on deductible contributions. - In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501 (a), in an amount not in excess of 15 percent of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan. * * * * * * (8) Self-employed individuals. - In the case of a plan included in paragraph (1), (2), or (3) which provides contributions or benefits for employees some or all of whom are employees within the meaning of section 401(c) (1), for purposes of this section - (A) the term "employee" includes an individual who is an employee within the meaning of section 401(c) (1), and the employer of such individual is the person treated as his employer under section 401(c) (4); * * * SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption from Taxation. - An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. * * * SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS. (a) Requirements for Qualification. - A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section - * * * (d) Additional Requirements for Qualification of Trusts and Plans Benefiting Owner-Employees. - A trust forming part of a pension or profit-sharing plan which provides contributions or benefits for employees some or all of whom are owner-employees shall constitute a qualified trust under this section only if, in addition to meeting the requirements of subsection (a), the following requirements of this subsection are met by the trust and by the plan of which such trust is a part: * * * ↩
3. Sec. 401(c) (4) provides in part: Employer. - An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer. * * * ↩
4. Sec. 401(c) (3) provides in part: Owner-Employee. - The term "owner-employee" means an employee who - (A) owns the entire interest in an unincorporated trade or business, * * * Sec. 401(c) (1) provides in part: Employee. - The term "employee" includes, for any taxable year, an individual who has earned income (as defined in paragraph (2)) for the taxable year. * * * Sec. 401(c) (2) (A) provides in part: In general. - The term "earned income" means the net earnings from self-employment * * * ↩
5. 42 U.S.C., section 1994, provides: The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void. * * * ↩
6. 42 U.S.C., section 1983, provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privleges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * * ↩
7. SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * $& (D) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantitates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. ↩