NELSON H. JONES AND JEAN JONES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2170–67    Filed January 27, 1969.

*Leif C. Beck*, for the petitioners.
*Peter J. Picotte II*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency of $443 in petitioners' income taxes for the taxable year ending December 31, 1963. The sole issue is whether petitioner is entitled to a deduction of $1,200, half the cost of section 405[1] retirement plan bonds purchased in that year.

All of the facts have been stipulated and are found accordingly.

Petitioners, husband and wife, had their legal residence in Paoli, Pa., at the time they filed the petition herein. They filed a joint income tax return on the cash basis for the calendar year 1963 with the district director of internal revenue at Philadelphia, Pa. Petitioner Jean Jones is a party herein only by virtue of having signed such joint return. All references to petitioner shall be deemed to refer to Nelson H. Jones.

During 1963, petitioner was a self-employed osteopath. During the period 1963 through 1967, he employed three or four individuals, but none of them for more than 20 hours a week.

On December 31, 1963, petitioner purchased U.S. Government Retirement Plan Bonds (hereinafter referred to as retirement plan bonds) for a total price of $2,400. The purchase was covered by a written application filed with the Federal Reserve bank at Philadelphia (T.D. form PD 3550, entitled "Application for and Proof of Purchase of United States Retirement Plan Bonds"). This form showed that the bonds were being purchased in petitioner's name as a self-employed individual and recited that they were being purchased for a "bond purchase plan, or a pension or profit-sharing plan, as described in Sections 405 and 401, respectively, of the Internal Revenue Code of 1954." In December of each subsequent year through 1967, petitioner filed with the Federal Reserve bank at Philadelphia a form PD 3550, substantially similar in content to the form filed in December 1963, and purchased between $2,000 and $2,500 worth of retirement plan bonds in each year.

On his 1963 Federal income tax return, petitioner deducted from his gross income half of the $2,400 paid for the retirement plan bonds in that year and attached Internal Revenue Service form 2950 SE to his return in support thereof. The form indicated that the bonds had been purchased pursuant to a pension plan funded by retirement plan bonds. It also showed that the plan covered only petitioner, with three

---

[1] All references, unless otherwise indicated, are to the Internal Revenue Code of 1954.

employees excluded because they were "part-time or temporary." A form 2950 SE, substantially similar in content, was attached to each of petitioner's Federal income tax returns for 1964 through 1967.

In November of 1965, petitioner for the first time filed with respondent Internal Revenue Service Form 3673, entitled "Application for Approval of Self-Employed Pension or Profit-Sharing Plan as Part of a Master or Prototype Form or Any Bond Purchase Plan." The form, as filled in by petitioner, stated that the "plan" had been signed on December 31, 1963, that only petitioner as owner-employee was covered (three other employees being excluded as part-time or temporary), and that the eligibility requirements of the plan were as follows:

All employees including owner employee who are customarily employed 20 hours per week, 5 months per year, and for a period of 3 years or more shall be eligible for coverage under this plan.

The employer contribution formula was specified in the form as follows:

Owner-employee—10% of earned income _____
Employees'—10% of annual compensation _____  } All amounts rounded off to the nearest multiple of $50.

The form received respondent's approval on November 23, 1965.

The right of the petitioner to deduct half of the $2,400 which he expended for the purchase of retirement plan bonds in 1963 turns upon whether there was a "plan" in existence *during that year* which satisfied the requirements of section 405.[2] Although there is an intimation

---

[2] SEC. 405. QUALIFIED BOND PURCHASE PLANS.

(a) REQUIREMENTS FOR QUALIFICATION.—A plan of an employer for the purchase for and distribution to his employees or their beneficiaries of United States bonds described in subsection (b) shall constitute a qualified bond purchase plan under this section if—

(1) the plan meets the requirements of section 401(a)(3), (4), (5), (6), (7), and (8) and, if applicable, the requirements of section 401(a)(9) and (10) and of section 401(d) (other than paragraphs (1), (5)(B), and (8)) ; and

(2) contributions under the plan are used solely to purchase for employees or their beneficiaries United States bonds described in subsection (b).

(b) BONDS TO WHICH APPLICABLE.—

(1) CHARACTERISTICS OF BONDS.—This section shall apply only to a bond issued under the Second Liberty Bond Act, as amended, which by its terms, or by regulations prescribed by the Secretary under such Act—

(A) provides for payment of interest, or investment yield, only upon redemption;

(B) may be purchased only in the name of an individual;

(C) ceases to bear interest, or provide investment yield, not later than 5 years after the death of the individual in whose name it is purchased;

(D) may be redeemed before the death of the individual in whose name it is purchased only if such individual—

(i) has attained the age of 59½ years, or

(ii) has become disabled * * * and

(E) is nontransferable.

(2) MUST BE PURCHASED IN NAME OF EMPLOYEE.—This section shall apply to a bond described in paragraph (1) only if it is purchased in the name of the employee.

(c) DEDUCTION FOR CONTRIBUTIONS TO BOND PURCHASE PLANS.—Contributions paid by an employer to or under a qualified bond purchase plan shall be allowed as a deduction

654

in petitioner's brief that no writing of any kind is required for qualification under that section, the point is not seriously pressed. Indeed, it would be most difficult to sustain any such contention. When Congress enacted the Self-Employed Individuals Tax Retirement Act of 1962 (Pub. L. 87–792, 87th Cong., 2d Sess. (1962), 76 Stat. 809, otherwise often referred to as H.R. 10), it integrated the new provisions respecting self-employed individuals with existing provisions governing contributions to employee pension, profit-sharing, stock bonus, and similar plans. See H. Rept. No. 378, 87th Cong., 1st Sess., pp. 1–5 (1961) ; S. Rept. No. 992, 87th Cong., 1st Sess., pp. 1–9 (1961) ; Hearings before the Senate Finance Committee on H.R. 10, 87th Cong., 1st Sess., p. 20, *et seq.* (1961). Compare H.R. 10, 86th Cong., 1st Sess. (Senate referred print, March 18, 1959), with H.R. 10, 86th Cong., 2d Sess. (Senate reported print, S. Rept. No. 1615, June 17, 1960). In effecting this integration, Congress carried over the word "plan" without any modification. By so doing, we are satisfied that it adopted the long-standing administrative interpretation of the word, dating back to 1943 in this context, as "a definite written program and arrangement." Sec. 1.401–1(a)(2), Income Tax Regs.; sec. 39.165–1, Regs. 118; sec. 29.165–1, Regs. 111; sec. 19.165–1, Regs. 103. See T.D. 5278, 1943 C.B. 478, 481.

The essential thrust of petitioner's argument is that his application to purchase retirement plan bonds on form PD 3550 in 1963 and in subsequent years, the form 2950 SE attached to his returns for each of the taxable years 1963 through 1967, and his application for approval of the plan on form 3673 and the obtaining of such approval in November of 1965 constituted sufficient written evidence of a "plan" to satisfy the requirements of section 405. Petitioner asserts that the terms of the purchased retirement plan bonds prevented their premature disposition or otherwise improper diversion, that he had no employees who were required to be covered, and that any detailed provisions which might have been spelled out could have been changed

_in an amount determined under section 404 in the same manner and to the same extent as if such contributions were made to a trust described in section 401(a) which is exempt from tax under section 501(a)._

\*      \*      \*      \*      \*      \*

_(f) EMPLOYEE DEFINED.—For purposes of this section, the term "employee" includes an individual who is an employee within the meaning of section 401(c)(1), and the employer of such individual shall be the person treated as his employer under section 401(c)(4)._

_(g) PROOF OF PURCHASE.—At the time of purchase of any bond to which this section applies, proof of such purchase shall be furnished in such form as will enable the purchaser, and the employee in whose name such bond is purchased, to comply with the provisions of this section._

_(h) REGULATIONS.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the provisions of this section._

in the future by amendment or termination of the plan. He therefore concludes that any further written evidence of the plan would have served no useful purpose. We disagree.

The enactment of H.R. 10 in 1962 represented the culmination of efforts designed to confer upon self-employed individuals the right to current deductions and postponed taxability for sums put aside for future retirement on a basis comparable to that which had for many years governed such plans for non-self-employed persons. See H.R. 10, 86th Cong., 1st Sess., which passed the House of Representatives on March 16, 1959, but died in the Senate; H. Rept. No. 64, 86th Cong., 1st Sess. (1959); S. Rept. No. 1615, 86th Cong., 2d Sess. (1960). At the time the 1962 provisions were enacted, the respective legislative committee reports reflected the deep concern of Congress that the extension of existing rules to self-employed individuals be accomplished in a way which would avoid abuse. See H. Rept. No. 378, *supra* at 2; S. Rept. No. 992, *supra* at 2.

This concern is evidenced in the specificity of the numerous provisions dealing with self-employed plans. In particular, in order for a retirement bond purchase plan to qualify under section 405, the requirements of several subsections of sections 401(a) and 401(d) must be met, including coverage of employees, absence of discrimination, nonforfeitability of rights, treatment of forfeitures, etc. We think the provision of section 401(d)(3) that the plan must benefit each full-time employee having a period of employment of 3 years or more is especially significant. Concededly, if there are no such employees, the plan may still qualify currently for the special benefits, but it still must incorporate a provision covering any such future employees. Sec. 1.401-12(b)(2), Income Tax Regs.; S. Rept. No. 1615, *supra* at 6. Viewed in the foregoing context, sections 401 and 405 do not contain such general use of the word "plan" as to permit the flexibility of interpretation found in such cases as *Fowler Hosiery Co.*, 36 T.C. 201 (1961), affd. 301 F. 2d 394 (C.A. 7, 1962), and *Mountain Water Co. of La Crescenta*, 35 T.C. 418 (1960), dealing with plans of liquidation of corporations and relied upon by petitioner.

We are satisfied that section 405 does not establish standards for determination of the existence of a qualified retirement bond purchase plan, independent of section 401. Rather, it merely provides a simplified investment mechanism for funds under such a plan. See H. Rept. No. 378, *supra* at 2 ("convenient and simple form of investment for retirement funds"); S. Rept. No. 992, *supra* at 19 ("an alternative form of investment which will be of particular interest to small businesses contemplating pension plans"). In our opinion, the statutory provisions demand that there be written evidence that the plan was committed, *within the taxable year*, to the satisfaction of the

basic requirements of coverage and to nondiscrimination with respect to future employees who fulfill the necessary qualifications of employment. Respondent's regulations properly implement this demand, at least insofar as this case is concerned. See sec. 1.401–12(b) (2), Income Tax Regs.; cf. S. Rept. No. 1615, *supra* at 6. Petitioner's contention that any commitment on his part, during 1963, to cover future qualified employees could have been undermined, or even negated, by subsequent amendment or termination of the plan proves too much. The fact is that an amendment or termination of a previously qualified plan must be accomplished in such a way as to preserve the plan's qualification status retroactively as well as prospectively. Cf. sec. 401(a) (7) and (8); sec. 1. 401–1(b), Income Tax Regs.

Clearly, petitioner's plan was not so committed during the taxable year 1963.[3] All that appears is that petitioner was committed in that year to buying bonds for himself. The subsequently filed forms PD 3550 and 2950 SE simply reveal an annual renewal of that commitment. Nor do we think that the filing of form 3673 in November 1965 and its approval by respondent require a different conclusion. That form does no more than establish certain details as of the date of that filing. Whether that form constitutes sufficient compliance with the statutory requirements of a plan in subsequent years is not at issue, since only the taxable year 1963 is involved herein. See Rev. Proc. 63–23, 1963–2 C.B. 757, 759.

Petitioner argues, in the alternative, that his conduct met the requirements of section 404(b)[4] as "a method of employer contributions * * * [having] the effect of a * * * plan" and that therefore section 404(a) applies "as if there were such a plan." Here again, petitioner has misconceived the function of the statutory provision. Section 404 covers not only qualified plans but also nonqualified plans. Sec. 404(a) (5). It was designed to assure that accrual basis taxpayers could not avoid, by means of an informal rather than a formal plan, the statutory mandate that deductions for contributions would be allowed only in the year of payment. See sec. 1.404(b)–1, Income Tax Regs.; H. Rept. No. 2333, 77th Cong., 2d Sess., p. 106 (1942); S. Rept. No. 1631, 77th Cong., 2d Sess., p. 141 (1942).

*Decision will be entered for the respondent.*

---

[3] Although form 3673 filed in November of 1965 states that the plan was "signed" on Dec. 31, 1963, no evidence was submitted that any plan existed on that date other than the three forms that were filed.

[4] SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN

(b) METHOD OF CONTRIBUTIONS, ETC., HAVING THE EFFECT OF A PLAN.—If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, subsection (a) shall apply as if there were such a plan.