RONALD C. PACKARD AND ROMA JEAN PACKARD, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 524-73—526-73.    Filed March 11, 1975.

*C. R. Gang-Nath,* for the petitioners.
*Stephen B. Zorick, Jr.,* for the respondent.

DRENNEN, *Judge:* In these cases, which were consolidated for trial and opinion, respondent determined the following deficiencies in petitioners' income tax:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 524-73 | Ronald C. Packard and | 1968 | $696 |
|  | Roma Jean Packard | 1969 | 806 |
| 525-73 | Floyd L. Packard and | 1968 | 618 |
|  | Alice E. Packard | 1969 | 760 |
| 526-73 | H. Von Packard | 1968 | 305 |
|  | Sheila D. Packard | 1968 | 308 |
|  | H. Von Packard and |  |  |
|  | Sheila D. Packard | 1969 | 626 |

The sole issue presented for decision is whether the three husband-petitioners are entitled to deduct, under section 404,

[1] Cases of the following petitioners are consolidated herewith: Floyd L. Packard and Alice E. Packard, docket No. 525-73; H. Von Packard and Sheila D. Packard, 526-73.

I.R.C. 1954, their proportionate share of the contributions made to a profit-sharing plan by a partnership of which they were the only partners. The profit-sharing plan covers only the three partners. At trial the issue was limited to whether certain persons employed by the partnership prior to adoption of the plan, but who became employees of a management and service corporation established by the partners before adoption of the plan, continued to be common law employees of the partnership. If so the plan did not meet the coverage requirements of section 401(d)(3), and the deductions cannot be allowed; if not the claimed deductions are allowable. Whether the plan qualifies as an owner-employee plan under other requirements of the law in effect for the years 1968 and 1969 is not in issue.

FINDINGS OF FACT

Certain facts have been stipulated and are so found.

Petitioners in docket No. 524-73, Ronald C. Packard and Roma Jean Packard, are husband and wife and reside in San Diego County, Calif. They filed joint Federal income tax returns for the taxable years 1968 and 1969.

Floyd L. Packard and Alice E. Packard, petitioners in docket No. 525-73, are husband and wife and reside in San Diego County, Calif. They filed joint Federal income tax returns for the taxable years 1968 and 1969.

H. Von Packard and Sheila D. Packard, petitioners in docket No. 526-73, are husband and wife and reside in San Diego County, Calif. These petitioners filed separate Federal income tax returns for 1968 and a joint Federal income tax return for 1969.

Ronald C. Packard, Floyd L. Packard, and H. Von Packard (hereinafter collectively referred to as petitioners or partners) are dentists licensed by the State of California and from 1962 up to the date of trial have engaged in dental practice in Carlsbad, Calif., as the sole partners of a partnership known as "the Packard Dental Group" (hereinafter referred to as the partnership).

In 1962 petitioners formed the Packard Development Corp. (hereinafter corporation), a California corporation, with each petitioner owning one-third of the stock of the corporation. The petitioners were also the only officers and directors of the corporation.

The corporation was formed to own the building in which the partners conducted their dental practice and to lease space in this building and dental equipment to the partnership and other dentists. By an agreement dated October 15, 1963, the partnership rented the dental clinic building and dental equipment from the corporation for a term of 5 years, commencing October 15, 1963, and terminating October 14, 1968, unless sooner terminated. Prior to August 1, 1968, the partnership subleased space in the building to another dentist, Cecil Slover.

On or about August 1, 1968, the lease of the building and equipment between the partnership and the corporation was terminated. On the same date, a lease management and facility agreement was entered into between the corporation as lessor-manager and the partnership as lessee. This agreement contained the following provisions:

3. The Corporation will bill and collect all fees for services rendered by Tenant on behalf.of patients, provide a receptionist and a telephone answering service, keep a list of all appointments and charges to patients, provide nine (9) opitories [sic] for tenant, a dental assistant for each dentist, a general office and rest rooms to be shared with other dentists in the premises, a complete prosthetic laboratory and staff, reasonable storage space in basement, off-street parking for dentists and patients, a kitchen to be shared with other dentists and employees of Corporation, and a licensed hygienist will be available to patients.

4. The Corporation shall further furnish the usual and customary heat, light, water and power service.

5. All persons employed in and about or in connection with the premises shall be and are hereby recognized as the employees of the Corporation and subject to its rules, regulations and requirements. The Corporation shall maintain all payroll records and pay all social security taxes, unemployment taxes, disability insurance, workmen's compensation and withhold all income taxes required on such employees and any other payroll taxes, however, should tenants employ any persons, tenant shall assume and pay all such obligations.

Under the terms of its lease the partnership was charged 60 percent of its gross billings for the use of the premises, facilities, and services.

A similar agreement was entered into between the corporation and Slover on August 1, 1968. Since the corporation owned a dental facility, including a building and equipment adequate for six dentists, in 1969 and 1970, respectively, it entered into similar agreements with two other dentists, C. J. Barston and Kenneth R. Craig.

Prior to August 1968, the partnership provided the employees necessary for their own practice as well as for the practice of Slover. The partnership had, as its employees, a general manager, a bookkeeper, a receptionist, a janitor, and four dental assistants. In addition, three licensed hygienists were employed by, and split their fees 60-40 with, the partnership to pay for the use of their space and equipment. After August 1, 1968, the three hygienists split their fees 60-40 with the corporation.

On August 1, 1968, all of the employees of the partnership, except the three partners, were "transferred" to the corporation. The corporation began withholding payroll taxes from the general manager, bookkeeper, receptionist, janitor, and four dental assistants who were formerly employees of the partnership. The corporation also began withholding income taxes from the three hygienists as a convenience to them. After August 1, 1968, the corporation paid all employment taxes, and assumed the obligations for liability insurance, workmen's compensation, State unemployment insurance, and unemployment taxes, for the general manager, bookkeeper, receptionist, janitor, and four dental assistants. Prior to August 1, 1968, the partnership had assumed all of the above-mentioned obligations; however, after this date, it no longer assumed any of these obligations. Before August 1, 1968, the partnership supplied all equipment, uniforms, bookkeeping, and billing; after August 1, 1968, the corporation provided all these items.

The parties have stipulated that prior to August 1, 1968, the receptionist and the dental assistants were supervised by a general manager who was in turn supervised by the petitioner-dentists as partners. Subsequent to August 1, 1968, the bookkeeper, receptionist, and dental assistants were supervised by the same general manager; and the general manager was supervised by the dentist-petitioners as directors and officers of the corporation.

The parties also agree that prior to August 1, 1968, the petitioners as partners had the power to order the general manager to hire and fire the bookkeeper, receptionist, and the dental assistants. After August 1, 1968, the dentist-petitioners held and could exercise this power only in their capacities as directors and officers of the corporation.

The duties and functions of the general manager, bookkeeper, receptionist, and dental assistants were identical both before and after August 1, 1968.

Prior to August 1, 1968, the partnership:

(a) Collected all fees;

(b) Kept a list of appointments and charges to patients;

(c) Provided 17 operatories;

(d) Provided a general office and reception room;

(e) Provided restrooms;

(f) Provided a complete prosthetic laboratory and staff;

(g) Provided storage space;

(h) Provided offstreet parking for all patients and employees;

(i) Provided a kitchen for employees and lessees;

(j) Provided heat, light, water, and power;

(k) Provided janitorial service; and

(l) Provided all personnel and supervision necessary to the practice of dentistry.

After August 1, 1968, the petitioner-dentists and the other dentists specified only the results to be accomplished, and the corporation provided all the foregoing. After August 1, 1968, the partnership carried no employees directly on its payroll except the three partners.

Five employees of the partnership had been full-time employees of the partnership for 3 years or more as of August 1, 1968. Bonnie Nevill had been the general manager and as such supervised the dental assistants and receptionists. In turn, she was supervised by the three partners. After the employees were transferred to the corporation Bonnie Nevill continued as general manager and supervisor of all the employees but was in turn supervised by the petitioner-dentists as officers and directors of the corporation.

On August 21, 1968, the partnership adopted a profit-sharing plan which covered only the three partners. On or about August 21, 1968, the partnership filed with respondent Form 3673 requesting approval of the profit-sharing plan as a plan qualifying under section 401 of the Code. The plan was not approved by the district director's office because it was determined that the plan excluded common law employees of the partnership who were allegedly transferred to the corporation, but who were under the supervision of the partners and performed the same services for the partners as were performed before the transfer. On or about

April 13, 1969, the partnership resubmitted Form 3673 for approval of its self-employed profit-sharing plan. This resubmitted application was again rejected by the district director's office for the same reason.

Contributions to the profit-sharing plan were made by the partnership in both 1968 and 1969 and each of the petitioners claimed deductions for their proportionate shares of the contributions on their Federal income tax returns for the years 1968 and 1969. These amounts were disallowed by the respondent in the statutory notices of deficiency.

### FINDING OF ULTIMATE FACT

The partnership had no common law employees after August 1, 1968, throughout the remainder of the year 1968, and 1969.

### OPINION

The only issue in this case is whether petitioners are entitled to deduct their proportionate shares of the contributions made by the partnership in which they were the only partners to a profit-sharing plan adopted by the partnership in August 1968. This in turn depends on whether the profit-sharing plan qualifies under section 401 of the Code,[2] particularly section 401(d) which is concerned with plans which benefit owner-employees. While there are many requirements in the law for qualification of such plans, our inquiry here is limited to whether this plan meets the requirements of section 401(d)(3)(A) which provides that in order to qualify the plan must benefit each full-time employee having a period of employment of 3 years or more.[3]

Petitioners argue that since the plan benefited all three partners who were the only employees of the partnership at the time the plan was adopted and for the remainder of the year 1968 and throughout 1969, the plan met the requirements of section 401(d)(3)(A) and the contributions to the plan are deductible under section 404(a)(3) and (9).

Respondent determined that the deductions are not allowable because the plan is not a qualified plan "because it excludes its [the partnership's] common-law employees who were transferred

---

[2] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

[3] The years here involved being 1968 and 1969, the amendments and provisions contained in the Employee Retirement Income Security Act of 1974 are not applicable.

to a corporation but are under the supervision of the partners and perform the same services to the partners as were performed before the transfer." Respondent argues first that the transferred employees remained the common law employees of the partnership for purposes of section 401(d)(3) of the Code, and second, that the intent of Congress in enacting section 401(d)(3) would be thwarted by allowing petitioners to deduct contributions to this plan which excludes the other employees simply because they were transferred to the corporation shortly before the plan was adopted.

Respondent does not argue that the corporation had no substance or even that there was no business reason for transferring the dental clinic employees to the corporation. Indeed, the evidence is clear that the corporation had been a viable and separate entity since it was formed in 1962 for a sound business purpose. Rather, respondent claims that the transfer of the employees to the corporation was a subterfuge to permit the partners to adopt a profit-sharing plan benefiting themselves but not their employees, and that the employees in substance, if not in form, continued to be common law employees of the partnership.

The Code provisions relating to pension and profit-sharing plans provide tax benefits for both employers and employees. Generally, if a plan qualifies under those provisions the employer may deduct its contributions to the plan in the year paid and the employee need not include in his income the amount he receives under the plan until the year in which he receives it. This has social implications as well because it encourages employers to establish and contribute to plans for their employees which provide income to the employees after they have retired and have a reduced earning capacity. But whether we should attempt to determine the intent of Congress under the light of such social objectives, as we believe respondent would have us do, is a matter of conjecture.

Prior to 1962 self-employed individuals were not considered employees of themselves under those provisions and, consequently, were excluded from participation in any qualified plans. In 1962 Congress sought to rectify this situation and amended section 401 to allow self-employed individuals to participate in such qualified plans. The method used was to define the term "employee" to include self-employed individuals.

Basically, subsection (c) of section 401 defined "employee" to include, for any taxable year, an individual who has earned income for the taxable year. Simultaneously, however, Congress created a new, more restrictive, category of employee termed "owner-employee." Section 401(c)(3) defines "owner-employee" as an employee who—

(A) owns the entire interest in an unincorporated trade or business, or
(B) in the case of a partnership, is a partner who owns more than 10 percent of either the capital interest or the profits interest in such partnership.

Finally, section 401(c)(4), in defining "employer," states that a partnership shall be treated as the employer of each partner who is an employee within the meaning of paragraph (1) of section 401(c).

When an owner-employee is covered under a pension or profit-sharing plan, section 401(d) becomes applicable. Section 401(d) provides that a trust forming part of a pension or profit-sharing plan which provides contributions or benefits for employees some or all of whom are owner-employees shall constitute a qualified trust under this section only if, in addition to meeting the requirements of subsection (a) (including section 401(a)(10)), it also complies with certain additional requirements contained within this subsection. Especially significant is section 401(d)(3) which preempts section 401(a)(3) for purposes of minimum coverage requirements of employees. Sec. 401(a)(10).

Section 401(d)(3) requires the following for qualification:

The plan benefits each employee having a period of employment of 3 years or more. For purposes of the preceding sentence, the term "employee" does not include any employee whose customary employment is for not more than 20 hours in any one week or is for not more than 5 months in any calendar year.

Legislative history and the Federal Income Tax Regulations show that the term "employee," within this context, is intended to include "common-law employees" who fulfilled the service requirements. S. Rept. No. 992, 87th Cong., 1st Sess., p. 29 (1961); sec. 1.401-10(b)(3), Income Tax Regs.

In the case at bar, the three partner-petitioners come within the definition of owner-employees and the partnership fits within the definition of employer. Consequently, section 401(d) is applicable in the present case.

Section 401(d)(3) makes it clear that in order for owner-employees to participate in a qualified plan, they must provide

such benefits for all of their full-time employees on a nondiscriminatory basis. Respondent alleges that the employees transferred to the corporation actually remained common law employees of the partnership and that at least five of these employees met the coverage requirements of section 401(d)(3) and must, necessarily, be included in the plan if it is to qualify. These five individuals had been employed by the partnership on a full-time basis for more than 3 years prior to August 1, 1968. The only issue to be resolved is whether they remained employees of the partnership for purposes of the minimum coverage requirements of section 401(d)(3) after that date.

Section 401 did not contain a definition of employee prior to adoption of the Self-Employed Individuals Tax Retirement Act of 1962, although there were common law guidelines for determining whether the relationship of employer-employee existed. Section 401(c), added by that Act, does include a definition of employee, which we have referred to above, but the definition was obviously added to expand the common law concept of "employee" to cover self-employed individuals and has little bearing on whether someone who is not self-employed is to be considered an "employee" for plan coverage requirements. We must continue to follow the common law concepts for that purpose. We do note, however, that section 1.401-10(b), Income Tax Regs., does emphasize that to qualify as an employee of an employer an individual must have received earned income from that employer or from that employee's trade or business.

The question of whether an individual is an employee of another is basically one of fact.[4] *Air Terminal Cab, Inc. v. United States,* 478 F. 2d 575 (C.A. 8, 1973); *Azad v. United States,* 388 F. 2d 74 (C.A. 8, 1968); *Alsco Storm Windows, Inc. v. United States,* 311 F. 2d 341 (C.A. 9, 1962).

The test usually considered fundamental in establishing whether certain individuals constitute common law employees of another is whether the person for whom the work is performed has the right to control the activities of the individuals whose status is in issue, not only as to results but also as to the means and method to be used for accomplishing the result. *Azad v. United States, supra; Alsco Storm Windows, Inc. v. United States, supra.* This same general common law definition is found

---

[4] *Jim's Window Service, Inc.,* T.C. Memo. 1974-115.

in section 31.3401(c)-1(b), Employment Tax Regs., defining "employee" for withholding purposes, stating in pertinent part:

(b) Generally the relationship of employer and employee exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is not an employee.

A similar statement adopting the common law definition is also found in section 31.3121(d)-1(c), Employment Tax Regs. Nevertheless, in determining who is an employee under specific circumstances; it is the total factual situation that controls, *Bartels v. Birmingham,* 332 U.S. 126 (1947), and due consideration must be given to all relevant factors in the given situation. *Alsco Storm Windows, Inc. v. United States, supra.*

While respondent's argument that the individuals who had been the employees of the partnership remained so even after their transfer to the corporation is, at first blush, rather appealing, we must conclude, on the basis of the facts of this case, that it is incorrect. Respondent contends that after the alleged transfer, the employees performed the identical services for the partnership, that the partnership continued in business in the same manner as before the transfer, and that the new lease-management agreement did not change the daily operation of the partnership. Respondent also points to the definitional framework of common law employees and argues that both before and after the alleged transfer the petitioners had supervisory powers over all employees.

We believe respondent is too imprecise in his analysis of petitioners' supervisory capacities. It appears that respondent is asking us to ignore the corporation, the petitioners' role as officers of the corporation, and declare that since petitioners as officers control the corporation and are the members of the

partnership, the individuals who work under the mantle of the corporation and perform services for the partnership are employees of the partnership. In essence, respondent wants us to ignore the corporate form for this issue while recognizing it for other purposes. We do not believe this can or should be done.

Under the lease management and facility agreement, the petitioners, as partners, specifically abnegated control over the details of the services performed for the benefit of the partnership. Neither did they retain, in their partnership capacity, the power to discharge any individuals. Indeed, the parties have stipulated that after August 1, 1968, the petitioner-dentists specified only the result to be accomplished, and the corporation "provided all personnel and supervision necessary to the practice of dentistry," and that subsequent to August 1, 1968, the individuals who performed the services were supervised by the general manager, Bonnie Nevill, who was in turn supervised by the petitioners as directors and officers of the corporation.

There also exists other indicia that the employer-employee relationship actually existed between the corporation and the individuals in question. After August 1, 1968, the corporation paid the salaries, the employment taxes, liability insurance, workmen's compensation, State unemployment insurance, withheld taxes, and assumed liability for unemployment taxes for all of these individuals. These factors must be considered in establishing by whom these individuals were employed, *Bartels v. Birmingham, supra; Alsco Storm Windows, Inc. v. United States, supra,* and weigh heavily in identifying these individuals as employees of the corporation rather than the partnership.

Even though the petitioners as partners undoubtedly continued to exercise a certain degree of control over the work of the dental assistants, that was because of the special nature of the work being done by the assistants rather than the employment relationship existing between petitioners and the dental assistants. The corporation furnished the services of dental assistants to the other three dentists who were not partners, and we do not believe they would be classified as employees of those dentists, even though they exercised the same degree of control over the assistants.

Furthermore, the emphasis on control of the details of the services performed as a significant test for the relationship of common law employee has been established under factual

circumstances quite different from those present here, and we doubt that it should be afforded preeminence in this case. At least it should not overshadow the other factors that are given consideration. In most of the cases wherein the right to direct and control the manner in which the work is performed as well as the result to be obtained has been accorded disproportionate weight the question was whether the person rendering the service was an employee or an independent contractor. See *Azad v. United States, supra; Wendell E. James,* 25 T.C. 1296 (1956); *Chester C. Hand, Sr.,* 16 T.C. 1410 (1951); *Raymond E. Kershner,* 14 T.C. 168 (1950).[5] In the instant case, the issue is whether the individuals are employees of the partnership or the corporation. Unless we ignore the corporation, it assumed all of the obligations of the employer of these individuals and has the right to control their activities except for the control a person receiving personal services would normally exercise over a person rendering those services while on the premises of the former.

In the independent contractor-employee situation the person whose status is in question has received some type of compensatory payments from the individual for whom the services are performed. As a result, such payments are given less consideration in those cases. But in this case the payment of salaries, insurance benefits, and withholding of taxes by the corporation on behalf of the employees in question gives a clear indication that they were employees of the corporation and those factors must be given considerable weight.

We assume that respondent would recognize that these employees were employees of the corporation for all purposes other than section 401. We do not believe recognition of such a dual capacity is logical, particularly from a tax accounting standpoint. Apparently the corporation has been deducting the salaries it paid to the employees, and there is no evident relationship between the amounts paid to the corporation by the partnership and the salaries paid by the corporation to the employees. We can only wonder whether if the partnership had attempted to cover these employees under its profit-sharing plan the respondent would have permitted the partnership to deduct its contributions in their behalf if all other circumstances were the same.

---

[5] See also *Jim's Window Service, Inc., supra; Roger K. Haugen,* T.C. Memo. 1971-294; *Robert H. Cowing,* T.C. Memo. 1969-135.

We recognize that there are objectives other than the tax considerations behind this retirement plan legislation; that generally it was designed to encourage employers to provide retirement benefits for employees, which these petitioners appear to be trying to avoid doing. However, it is clear that Congress, in enacting the provisions permitting self-employed individuals to participate in qualified plans, recognized the possibility that self-employed employers might separate the rest of their employees into separate entities to avoid having to cover them under plans established for their own benefit. Section 401(d)(3) requires that for a plan that benefits owner-employees to qualify it must cover *all employees* with a period of employment of 3 years or more—which is more stringent than the requirements for qualification of corporate plans. And section 401(d)(10) provides that in order for an owner-employee plan to qualify, if the owner-employee, *as an owner-employee,* controls any other trade or business the employees of that other trade or business must also be given retirement benefits no less favorable than benefits provided for the owner-employee under the plan. But in its wisdom Congress deliberately deleted a provision which would have required petitioners in this case to provide benefits for the employees of the corporation which they controlled.

It will be noted that the provision relating to two or more businesses in section 401(d)(10) is applicable only if control of the second business is held by an owner-employee *as an owner-employee.*

While considering H.R. 10, 86th Cong., 1st Sess., which was passed by the House of Representatives on March 16, 1959, but died in the Senate, the Senate Finance Committee noted that the term "owner-employee" would include, in the case of a corporation, a shareholder-employee who owns more than 10 percent of the value of the outstanding stock of the corporation or who owns more than 10 percent of the total combined voting power of all classes of stock entitled to vote. S. Rept. No. 1615, 86th Cong., 2d Sess., p. 18 (1960). S. Rept. No. 1615, *supra* at p. 21, in commenting on the situation where an owner-employee controls more than one trade or business, stated, in pertinent part:

Paragraph (8)(A) of the new subsection (d) provides that, if the plan covers an owner-employee who controls, or two or more owner-employees who together control, the trade or business with respect to which the plan is established, and who also control as an owner-employee or as owner-employees

one or more other trades or businesses, such plan and the plans (if any) established by such other trades or businesses must constitute an overall plan which meets the nondiscrimination requirements of section 401(a)(3) and (4) with respect to the employees of all such trades or businesses. In determining whether the nondiscrimination rules of section 401(a)(3) and (4) are met with respect to the employees of more than one trade or business, the general rules of such section (including the reasonable classification provision of sec. 401(a)(3)(B)) shall be applicable.

Paragraph (8)(B) of the new subsection (d) provides that an owner-employee, or two or more owner-employees, shall be considered to control a trade or business if such owner-employee, or such two or more owner-employees together—

(i) Own the entire interest in an unincorporated trade or business, or

(ii) In the case of a partnership, own more than 50 percent of either the capital interest or the profits interest in such partnership, or

(iii) In the case of a corporation (as defined in sec. 7701(a)(3)), own either more than 50 percent of the value of the outstanding stock of the corporation or more than 50 percent of the total combined voting power of all classes of stock entitled to vote.

Conf. Rept. No. 2411, 87th Cong., 2d Sess. (1962), states at page 26:

The Senate amendment (see proposed sec. 401(c)(3)) included in the definition of an owner-employee (in addition to proprietors and more than 10 percent partners) corporate employees who own more than 10 percent of the value or voting power of the stock of a corporation. Plans covering these corporate employees therefore would have become subject to the new requirements for qualification of retirement plans covering owner-employees and the limitations on the amount deductible with respect to contributions made on behalf of owner-employees. The definition of owner-employee in the conference substitute (see proposed sec. 401(c)(3)) does not include the corporate employees described in the preceding sentences.

The Senate Finance Committee agreed that the term "owner-employee" should not include shareholder-employees of corporations. S. Rept. No. 992, 87th Cong., 1st Sess., p. 8 (1961).

We perceive no subversion of congressional intent in the present situation. Congress was not unmindful of closely held corporations. It clearly chose not to bring them or their corporate shareholder employees within the purview of section 401(d). See also section 1.401-10(d), Income Tax Regs., for definition of owner-employee. It has been recognized that if a self-employed individual or owner-operators have no full-time common law employees, a plan which provides benefits for him or them alone may qualify. *Nelson H. Jones*, 51 T.C. 651, 655 (1969).

Respondent has not assailed the substance of the corporation. Additionally, respondent did not directly challenge the business purpose of the transfer of employees to the corporation or the corporation's new role in providing workers and management services. See *Gregory v. Helvering,* 293 U.S. 465 (1935).

We believe that the substance of the corporation cannot be questioned. It has existed since 1962 and it leased offices and dental equipment to the partnership which in turn subleased office space and equipment to another dentist. This corporation remained a viable entity throughout the period in question. Also, it cannot be claimed that the transfer of the employees to the corporation was totally devoid of a business purpose. After August 1968, the corporation marketed a complete package of services necessary to the practice of dentistry. Prior to August 1, 1968, the corporation had provided office space and dental equipment. After this date, it provided not only the equipment and facilities but also a complete staff, including dental assistants, a receptionist, a laboratory staff, telephone-answering service, and a billing service. The corporation sold this complete service not only to the partnership but also to three independent dentists. We assume that the corporation necessarily had to increase its staff from the number originally obtained from the partnership in order to fulfill its contractual commitments to the additional dentists who purchased the complete package subsequent to August 1, 1968.

We cannot say that the petitioners failed to have a business purpose in allowing the corporation to market a complete service package for dentists. In point of fact, petitioners seemed to have demonstrated great business acumen in establishing a corporation which could sell such services to other dentists. We do, however, recognize that taxpayers were undoubtedly well aware of the benefit to them if they could establish a profit-sharing plan which only included the three petitioners. Nonetheless, there was substance to the petitioners' transaction. Taxpayers are not required to choose an arrangement which results in greater tax consequences, but have the legal right to decrease or altogether avoid such taxes by means which the law permits. *Gregory v. Helvering, supra; Daniel D. Palmer,* 62 T.C. 684 (1974).

Respondent asserts that the result and reasoning of Rev. Rul. 68-303, 1968-1 C.B. 165, should control this case. In Rev. Rul. 68-303, a partnership entered into a contract to transfer its

common law employees to an unrelated corporation. The employees continued to perform the same services for the partnership and continued to be supervised by the partners. The corporation issued the paychecks and provided all necessary insurance for the employees. The corporation received a fee equal to 110 percent of the aggregate salaries of the employees. The ruling concluded that these individuals continued to be common law employees after the alleged transfer because they performed the same services for the partnership under the continuing control and supervision of the partnership.

We also note that respondent issued two additional revenue rulings dealing with this subject several days ago. In Rev. Rul. 75-35, I.R.B. 1975-6, 6, the facts were somewhat similar to those in Rev. Rul. 68-303, except that there the professional practice was not incorporated while in this case it was—and a similar conclusion was reached. In Rev. Rul. 75-41, I.R.B. 1975-6, 22, the facts were also somewhat similar except that the employees apparently had not been employed by the users of their services previously. There, however, it was concluded that for purposes of the Federal Insurance Contributions Act, the Federal Unemployment Tax Act, and the collection of Income Tax at Source on Wages, the employees were employees of the corporation that paid their compensation.

There are distinctions in the factual circumstances described in Rev. Rul. 68-303 and Rev. Rul. 75-35 and the factual circumstances before us. In Rev. Rul. 68-303 the employees continued to be supervised by the partners, and the fee paid to the corporation for their services was a specified percentage of the employees' wages. Here it is stipulated that after the transfer of the employees to the corporation the dentists specified only the results to be accomplished by the services rendered and the corporation provided all the rest; and there was no apparent relationship between the amounts paid to the corporation and the employees' salaries. The corporation also provided all the other facilities and equipment required to conduct a dental practice and had done so for 6 or 7 years. The fee paid to the corporation covered all of these services. In Rev. Rul. 75-35, the service corporation did not provide services to other physicians while here it did; the corporation apparently provided only services and not the other facilities as it did here; and again supervision and control of the employees was exercised by the professional

corporation. Rev. Rul. 75-41 was concerned with whether the individuals were employees of the service corporation for employment tax purposes, while here the issue is whether the individuals are employees of the partnership for purposes of meeting the coverage requirements of section 401(d)(3). Nevertheless we recognize the similarities.

But since we find that the facts of the ruling do not specifically cover this case, proper restraint dictates that we do not place a stamp of approval or disapproval on everything said in the rulings, or even comment on the validity or invalidity of the rulings as limited to the facts contained therein. In *Andrew A. Sandor*, 62 T.C. 469, 481 (1974), we stated:

The purpose of the publication of revenue rulings is to publish the official interpretation of the Revenue Service of certain laws as applied to certain circumstances in order to promote uniform application of the tax laws by Service employees and to advise taxpayers of the official Service position. They do not have the force and effect of Treasury Department Regulations but are published to provide precedents to be used in the disposition of other cases. They are not binding on the courts. See Statement of Principles of Internal Revenue Tax Administration in current Internal Revenue Bulletins; *United States* v. *Hall*, 398 F. 2d 383 (C.A. 8, 1968); *Stubbs, Overbeck & Associates* v. *United States*, 445 F. 2d 1142 (C.A. 5, 1971).

It would seem that Rev. Rul. 75-41 would support our conclusion here that after August 1, 1968, the individuals were employees of the corporation rather than the partnership, except for the fact that the employees had been employees of the partnership immediately before they were transferred to the corporation.[6]

All of the above suggests that respondent would have us conclude that these individuals were common law employees of the partnership for retirement plan purposes but not for other purposes; and that the fact that the employees were formerly employed by the partnership is a determining factor. We find no justification for this in the law.

We conclude that after August 1, 1968, the partnership did not have any common law employees. Furthermore, we find that the transfer of certain employees to the corporation prior to the

---

[6] See also *Claremont Country Club* v. *I.A.C.*, 174 Cal. 395, 163 Pac. 209 (1917), wherein it was held that a caddy was the employee of the country club rather than the golfer for whom he caddied; and Rev. Rul. 56-502, 1956-2 C.B. 688, which set forth guidelines for determining whether individuals engaged by a company to perform domestic services for its clients were employees of the agency.

formation of the profit-sharing plan did not thwart the legislative intent of section 401. Based on the facts as presented to this Court, the partnership did not exclude any eligible common law employees from its profit-sharing plan, and, consequently, the plan did not fail to qualify for that reason.

*Decisions will be entered for the petitioners.*

