LISA M. MATT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matt v. Commissioner
Docket No. 20037-88
United States Tax Court
T.C. Memo 1990-209; 1990 Tax Ct. Memo LEXIS 228; 59 T.C.M. (CCH) 472; T.C.M. (RIA) 90209; April 25, 1990, Filed *228 Decision will be entered under Rule 155. Royal I. Blum, for the petitioner. Susan T. Mosley, for the respondent. GUSSIS, Special Trial Judge. GUSSIS
*229 *680 MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to section 7443A(b) of the Internal Revenue Code and Rule 180 et seq. [1]
Respondent determined a deficiency in petitioner's Federal income tax for the year 1984 in the amount of $ 5,860; an addition to tax under section 6661 in the amount of $ 1,259.50; an addition to tax under section 6653(a)(1) in the amount of $ 251.90; *230 and an addition to tax under section 6653(a)(2) in the amount of 50 percent of the interest due on the underpayment of $ 5,860 attributable to negligence. After concessions *681 by respondent, the issues for decision are: (1) Whether petitioner is entitled to exclude from income certain payments received by her as compensation from the U.S. Agency for International Development; and (2) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts were stipulated and are so found. Petitioner resided in Niger at the time the petition herein was filed. Lisa Matt (hereinafter referred to as petitioner) received a bachelor of arts degree in economics in 1974 and a master's degree in international relations in 1975. In 1976, petitioner became a Peace Corps volunteer. In 1981, petitioner signed a contract with the Peace Corps to help design a cooperative program in Togo. She returned to the United States in 1981 and signed a contract with the U.S. Agency for International Development (USAID). In 1982, petitioner signed a contract with Development Alternatives, a private consulting firm, to go to Zaire and work with *231 farmer organizations to assist them in marketing their produce through the use of collective bargaining. Petitioner then went to Mali to design a farming project for Development Alternatives. In 1983, petitioner entered into a contract with the USAID mission in Mali to conduct a comparative study of regional credit systems. After working on that study in Mali petitioner returned to Zaire in 1984 to finish a project for Development Alternatives. USAID is an agency of the United States Government which supplies information, technical advice, supplies, and personnel to foreign countries. USAID performs its work through the use of three categories of personnel: (1) direct hires; (2) personal services contractors and (3) nonpersonal services contractors. Direct hires have no written employment contract but have openended terms of employment. Personal services contractors (PSC's) and nonpersonal services contractors (NPSC's) have written employment contracts and are employed for terms of limited duration. In July 1984 petitioner signed a contract with the USAID mission in Haiti (USAID/Haiti). The document petitioner signed was a USAID form entitled "Contract with a U.S. Citizen *232 or U.S. Resident for Personal Services Abroad" and states that it was a "Contract for Personal Services." At the time petitioner entered into this contract, contracts between USAID and U.S. citizens were governed by 48 CFR, Chapter 7, Appendix F, formerly in 41 CFR. Section 1(b)(1) of Appendix F states that "A personal services contract is one which establishes an employer-employee relationship." Pursuant to the contract, petitioner served as Cooperative Marketing Advisor to the Office de Promotion des Denrees Exportables (OPRODEX) and the Cooperative Cafeiere d'Haiti (CCH), both Haitian organizations dealing with commodities and exports. Petitioner was also the Project Coordinator for the Small Farmer Marketing Project, which had as one of its primary purposes to establish small farmer coffee producers' marketing networks through the development of local processing and marketing cooperatives. The latter position called upon petitioner to work with both Haitian and USAID/Haiti personnel. Her tasks included: coordinating various cooperative projects; preparing implementation plans; assisting the implementation of contractual construction, procurement and training activities; and *233 preparing project reports and project documentation. The contract contains a section entitled "Scope of Services" which includes the following reporting requirements: i. Monthly project implementation reports ii. Quarterly project status reports (QPSRs) iii. Cooperative inventory report (due October 1984) iv. Plan of Work for subsector assessment of cooperatives (due December 1984) v. Cooperative subsector assessment and analysis (due February 1985) vi. A complete end of contract final report which will include among other items, the issue of export promotion of, by and for cooperatives. The contract also specifies that petitioner was to submit other reports as instructed by the Director of USAID/Haiti or his designee. Pursuant to the contract with USAID/Haiti, petitioner received an annual salary. However, petitioner was obligated to work a regular forty-hour work week; if she worked less than 40 hours per week, her compensation was payable at a daily or hourly rate. Petitioner received reimbursements for expenses such as international travel and housing. To receive payments, petitioner was required to submit a monthly voucher detailing her expenditures *234 and a statement showing the days and hours worked. John V. D. Lewis, the Project Officer and USAID/Haiti direct hire, signed most of her time and attendance statements. The remainder of the statements were signed by other USAID/Haiti officials. Mr. Lewis also noted his approval of petitioner's vouchers on a form entitled "Project Officer Checklist for Administrative Approval of Vouchers." On the majority of these checklists, under the paragraph which states "My administrative approval is based on *682 the following:", are the handwritten words "office supervision." The contract provided workmen's compensation benefits "in accordance with the Federal Employees Compensation Act," and reimbursements for health and life insurance premiums up to $ 175 per year. Petitioner accrued both annual leave and sick leave, and was required to obtain approval before taking leave for periods of more than three days. USAID/Haiti withheld both Federal income taxes and social security taxes from her salary and paid the employer's portion of her social security taxes. USAID/Haiti furnished most of the resources required by petitioner to carry out the contract, including office space and *235 secretarial assistance. In the event that USAID/Haiti did not have secretarial assistance available, petitioner was allowed to hire assistance, but only with the written approval of the Contracting Officer. In 1984 petitioner received payment in the amount of $ 7,275 from Development Alternatives which she excluded from taxable income on her 1984 return as foreign earned income. Respondent concedes that this amount is excludable under sec. 911. In 1984, petitioner also received payments in the amount of $ 5,700 from USAID/Bamako in Mali and $ 15,003 from USAID/Haiti. On her 1984 Federal income tax return petitioner also excluded these amounts from taxable income as foreign earned income. Petitioner did not pay any foreign income taxes in 1984. OPINION Section 911(a)(1) provides, in part, that "At the election of a qualified individual * * *, there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year * * * (1) the foreign earned income of such individual * * *." Prior to 1981, the exclusion of income under section 911 did not apply to amounts "paid by the United States or any agency thereof." The Economic *236 Recovery Tax Act of 1981, however, amended section 911 to provide that the exclusion of income under that section does not apply to amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof." The Conference report provided: The bill extends the benefits of the exclusion to individuals who receive compensation from the U.S. or any agency thereof, but who are not employees of the U.S. or any agency thereof. Thus, for example, the bill extends the exclusion to certain overseas independent contractors and teachers at certain schools for U.S. dependents who are not employees of the U.S. or any agency thereof. [H. Rept. 97-215 (Conf.) at 195, 204 (1981), 1981-2 C.B. 481, 486.] The parties do not dispute the fact that petitioner is a qualified individual, or that USAID is an "agency" of the United States. Respondent argues, however, that petitioner was an employee of USAID and is thus not entitled to the benefits of the foreign earned income exclusion. Petitioner claims that she was not an employee but, rather, an independent contractor. The question of whether an individual is an employee is basically one of *237 fact. Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Packard v. Commissioner, 63 T.C. 621 (1975). Petitioner bears the burden of proof. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). The courts have identified several factors to be considered in determining whether an employment relationship exists. Among them are: (1) the right to control the manner in which the work is to be performed; (2) whether the individual performing the work has an opportunity for profit or loss; (3) investment in the work facilities; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; (6) whether the service rendered is an integral part of the alleged employer's business; and (7) the intent of the parties. United States v. Silk, 331 U.S. 704 (1947); Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. at 232. The relative importance of these factors must be viewed under *238 the special facts and circumstances of each case. Although the presence or absence of any one factor is not necessarily determinative, the test usually considered fundamental is whether the person for whom the work is performed has the right to control the activities of the individuals whose status is in issue, not only as to results but also as to the means and method to be used for accomplishing the result. Packard v. Commissioner, 63 T.C. at 629. The control test overlaps many of the other factors. The degree of control required to establish an employer-employee relationship varies with the facts of each case. The control of an employer over professional employees is generally much less than the control over nonprofessional employees. James v. Commissioner25 T.C. 1296, 1301 (1956). We have considered the several relevant factors in determining the nature of petitioner's status in Haiti. USAID/Haiti not only had the right to, but did in fact exercise considerable control over petitioner's work. Petitioner was not free to establish new programs or objectives *683 but was required to manage ongoing projects. Petitioner could not *239 set her own hours or take extended leave without permission; Mr. Lewis, the project officer, reviewed her time sheets and expense vouchers. Petitioner was required to submit periodic progress reports to USAID/Haiti personnel and could be instructed to submit additional reports at their direction. Moreover, the report formats were set forth in handbooks published by USAID. USAID/Haiti also furnished petitioner's office, supplies, and secretarial help. Petitioner had no authority to hire on her own. Furthermore, petitioner's compensation more closely resembled that of an employee than that of an independent contractor. Petitioner earned a salary and was reimbursed for expenses. She was not in a position to increase her profit by her own actions; neither was she at risk for loss. The record also establishes that the parties intended to create an employer-employee relationship. The document used to establish the relationship stated that it was a "Contract for Personal Services." Petitioner stipulated that she was a personal services contractor and Appendix F, which set forth the governing regulations, specifies that a "personal services contract" establishes an employer-employee *240 relationship. This is supported by the testimony of Patricia Bullock and Frank Bettucci, both USAID employees. Patricia Bullock worked as a Contracting Officer and as such was familiar with services contracts. Frank Bettucci was the Executive Officer of USAID/Haiti in 1984 and 1985 and responsible for all support operations for direct hire and contract personnel. Petitioner claims that Appendix F provides that individuals working for USAID under contract "'shall not be regarded as employees of the U.S. Government for the purpose of any law administered by the Civil Service Commission.'" However, the paragraph on which petitioner relies is unambiguously limited by its own language to a specific purpose and situation and does not purport to apply to the administration of any law under the Internal Revenue Code. Moreover, the fact that petitioner, as a personal services contractor, was not eligible for all of the benefits accruing to a Federal employee is not determinative. With respect to the payments petitioner received from USAID/Bamako in 1984, petitioner failed to produce evidence to demonstrate that her relationship with USAID/Bamako was other than employer-employee as determined *241 by respondent. Although it appears that a contract was executed to cover the terms of her work in Mali, no contract or any other document was offered in evidence to indicate the nature of such terms. The record with respect to this items is extremely unsatisfactory. Under the circumstances, it would be reasonable to assume that the USAID/Bamako work was conducted much the same as the work performed under the USAID/Haiti contract. Petitioner has failed to meet her burden of proof with respect to this item. Accordingly, we find that petitioner was an employee of the USAID mission in Mali for purposes of section 911. Finally, we note that the exclusion of foreign earned income was designed to prevent United States Government employees from escaping taxation on their income by both the United States and the foreign governments. Soboleski v. Commissioner, 88 T.C. 1024, 1030 (1987), affd. without published opinion 842 F.2d 1292 (4th Cir. 1988). Congress was concerned that section 911 not provide an unjustifiable windfall for those individuals who paid neither Federal nor foreign income taxes. See Smith v. Commissioner, 77 T.C. 1181, 1185 (1981), *242 affd. 701 F.2d 807 (9th Cir. 1983). Petitioner's position is precisely that which Congress sought to preclude by enacting section 911(b)(1)(B)(ii); that is, she paid no foreign income taxes in 1984 on her compensation from USAID and seeks to avoid the payment of Federal income taxes as well by excluding that compensation from her gross income. On this record, we conclude that petitioner was an employee of both USAID/Bamako and USAID/Haiti during the relevant period and, accordingly, we find that petitioner is not entitled to the exclusion of income under section 911(a). Respondent's determination as to these items must therefore be sustained. Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or disregard of rules and regulations. Section 6653(a)(2) imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Petitioner has the burden of proof. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner relies on the fact that she discussed this issue with her tax advisor who also prepared her tax return. However, *243 the mere assertion, without more, that she relied on such advice does not necessarily insulate the petitioner from the negligence addition. Perrett v. Commissioner, 74 T.C. 111, 134 (1980), affd. without published opinion 679 F.2d 900 (9th Cir. 1982). Under the circumstances of this case, we do not believe that petitioner, an intelligent and well-educated individual, could have believed in good faith that her work for *684 USAID was not as an employee working for a government agency. On this record, we must sustain respondent's determination on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩