LLOYD M. GARLAND, M.D., F.A.C.S., P.A., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9956–78R.     Filed October 4, 1979.

*Clarence P. Brazill, Jr.,* and *Gary A. Ward,* for the petitioner.
*Deborah A. Butler,* for the respondent.

OPINION

DAWSON, *Judge:* This is an action for declaratory judgment pursuant to section 7476(a).[1] Respondent has determined that petitioner's pension plan does not qualify under section 401 because it does not comply with the antidiscrimination provisions of section 401(a)(4) and section 410(b)(1). Having exhausted all administrative remedies as required by section 7476(b)(3), petitioner asks this Court to review respondent's adverse determination.

This case was submitted with a fully stipulated administrative record pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The administrative record is incorporated herein by this reference. The pertinent facts are summarized below.

The petitioner, Lloyd M. Garland, M.D., F.A.C.S., P.A. (hereinafter the association), is a professional association organized under the laws of Texas and incorporated on February 1, 1973. The sole employee and shareholder of the association throughout its existence has been Dr. Lloyd M. Garland. Prior to the formation of the professional association, Dr. Garland had practiced medicine in partnership with Dr. Jack Dunn, Jr., in Lubbock, Tex. On February 1, 1973, their partnership was dissolved and the association and Dr. Dunn entered into a partnership known as the Neurosurgical Unit (hereinafter the partnership), in which each partner owned a 50-percent interest in profits.

The association adopted a pension plan which qualified under section 401 on February 1, 1973. Thereafter, the association

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in question, unless otherwise indicated.

made contributions to a pension fund on behalf of Dr. Garland and the employees of the partnership.[2] Subsequent to the enactment of the Employee Retirement Income Security Act of 1974 (ERISA), however, the association made a number of amendments to the plan. The amended plan did not cover the partnership employees, and the association requested a ruling from the National Office, Technical Services Branch, Washington, D.C., in May 1976 to determine if the exclusion of those employees would adversely affect the plan's qualified status. On July 8, 1976, the National Office issued a ruling which stated that the association and partnership were not under common control as defined in section 414(c) and the regulations thereunder. Consequently, the partnership employees were not to be considered the employees of the association in determining whether the association's plan met the coverage requirements of sections 401(a)(4) and 410(b)(1). However, on September 30, 1976, the National Office limited the scope of the ruling by stating that it was directed only at the specific issue of whether the plan ran afoul of sections 401(a)(4) and 410(b)(1) by virtue of section 414(c), and that it did not consider the effect of Revenue Ruling 68–370, 1968–2 C.B. 174.[3]

---

[2] The contributions made on behalf of the partnership employees were computed with reference to the association's distributive share of compensation paid to those employees.

[3] Rev. Rul. 68–370 provided as follows:

"Advice has been requested whether a corporation that participates in a joint venture is required to take employees of the joint venture into account in determining whether the corporation's profit-sharing plan meets the requirements of section 401(a) of the Internal Revenue Code of 1954.

"M corporation and X, an unrelated corporation, are general contractors engaged in the construction business. They entered into a joint venture for the performance of construction contracts awarded to the joint venture directly or assigned to it by M or X. The joint venture has its own bank account and its own employees. None of these employees has ever, at any time, performed services directly for M or X. The joint venture pays the taxes imposed on its employees' wages by the Federal. Insurance Contributions Act and the Federal Unemployment Tax Act and withholds income tax on their wages.

"M established a noncontributory profit-sharing plan for its employees under which it agreed to contribute, annually, ten percent of its net earnings.

"To qualify under section 401(a) of the Code a profit-sharing plan must meet the specific coverage and nondiscrimination requirements set forth therein.

"The joint venture of the two corporations is a partnership within the meaning of sections 761(a) and 7701(a)(2) of the Code. A partnership is not itself a taxable entity for Federal income tax purposes but rather is merely the aggregate of the constituent partners. See sections 701 through 708 of the Code and the Income Tax Regulations thereunder. Once the requisite employment relationship is established between the partnership and the individuals who are rendering services to the partnership, such relationship is also established between each corporate partner and the employees for purposes of sections 401 through 404 of the Code. This conclusion does not encroach upon the general view that employment for pension trust, profit-sharing, and stock bonus plan purposes is the same as employment for such public programs as the Federal Unemployment Tax Act, since the essential employment relationship must still exist between the partnership and the individual

On March 15, 1977, the association submitted an application for determination of the plan's qualified status under section 401. The District Director of the Dallas Key District subsequently issued a proposed adverse determination for the 1976 taxable year because the plan did not cover the partnership's employees. The Regional Office sustained this proposed determination, the National Office declined to reconsider the matter, and on August 15, 1978, the District Director issued a final adverse determination. The association has petitioned this Court for a review of that determination.

The basis for the adverse determination is that the plan does not comply with the coverage requirements of section 401(a)(4) and section 410(b)(1). Section 401(a)(4) provides that a plan will fail to qualify if the contributions or benefits provided thereunder discriminate in favor of employees who are officers, shareholders, or highly compensated. Section 410(b)(1) sets forth certain minimum standards relating to the eligibility of employees for coverage under the plan, as follows:

SEC. 410. MINIMUM PARTICIPATION STANDARDS.

(b) ELIGIBILITY.—

(1) IN GENERAL.—A trust shall not constitute a qualified trust under section 401(a) unless the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under section 401(a) which benefits either—

(A) 70 percent or more of all employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have not satisfied the minimum age and service requirements, if any, prescribed by the plan as a condition of participation, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary not to be discriminatory in favor of employees who are officers, shareholders, or highly compensated.

---

rendering services. The sole effect of such conclusion is to attribute to each partner the employment relationship that exists between the partnership and the individuals. Compare Revenue Ruling 60-379, C.B. 1960-2, 156, which involves employees of a corporation who were temporarily transferred to the corporation's joint venture.

"Since the employees of the joint venture in this case are considered employees of M, it is held that such employees, and M's distributive share of the compensation paid to them, must be taken into account in determining whether M's profit-sharing plan meets the coverage and nondiscrimination requirements set forth in section 401(a) of the Code."

Although the partnership did have employees, the record does not reveal their number. It is clear, however, that during the year in issue, Dr. Garland was the only individual eligible to participate under the plan. Since the burden of proof is on petitioner, we must assume that if the partnership employees are to be viewed as employees of the association, then the plan does not satisfy either section 401(a)(4) or section 410(b)(1) because it discriminates in favor of a shareholder. Thus, the only issue we must decide is whether the partnership employees must be considered employees of the association for the purposes of sections 401(a)(4) and 410(b)(1).

The parties agree that section 414(c)[4] does not apply in this case. Section 414(c) was enacted as part of ERISA and provides that the employees of two or more business entities which are under common control shall be treated as employed by a single employer for purposes of section 401. Although Congress did not provide a statutory definition of "common control," it did require that the regulations under section 414(c) be based on principles similar to those which are applicable in the case of section 414(b). Section 414(b)[5] states that all employees of corporations belonging to a controlled group (as defined in section 1563(a)) must be treated as employed by a single employer for section 401 purposes. Thus, the temporary regulations which define common control under section 414(c) are modeled after the controlled group provisions in section 1563(a). See sec. 11.414(c)–2, Income Tax Regs., adopted as temporary

---

[4]SEC. 414. DEFINITIONS AND SPECIAL RULES.

(c) EMPLOYEES OF PARTNERSHIPS, PROPRIETORSHIPS, ETC., WHICH ARE UNDER COMMON CONTROL.— For purposes of sections 401, 408(K), 410, 411, and 415, under regulations prescribed by the Secretary, all employees of trades or businesses (whether or not incorporated) which are under *common control* shall be treated as employed by a single employer. The regulations prescribed under this subsection shall be based on principles similar to the principles which apply in the case of subsection (b). [Emphasis added.]

[5]SEC. 414. DEFINITIONS AND SPECIAL RULES.

(b) EMPLOYEES OF CONTROLLED GROUP OF CORPORATIONS.—For purposes of sections 401, 408(k), 410, 411 and 415, all employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a), determined without regard to section 1563(a)(4) and (e)(3)(C)) shall be treated as employed by a single employer. With respect to a plan adopted by more than one such corporation, the minimum funding standard of section 412, the tax imposed by section 4971, and the applicable limitations provided by section 404(a) shall be determined as if all such employers were a single employer, and allocated to each employer in accordance with regulations prescribed by the Secretary.

regulations under sec. 414(c) by T.D. 7388, 1975–2 C.B. 180, and not yet made permanent.[6]

Section 11.414(c)–2, Income Tax Regs., lists three general situations when affiliated entities will, under certain circumstances, be deemed to be under common control: (1) A parent-subsidiary group, (2) a brother-sister group, (3) and a combined group.[7] Petitioner clearly does not belong to any of these

---

[6]All further references to regulations in this opinion will be to the temporary regulations adopted in T.D. 7388.

[7]Sec 11.414(c)–2, Income Tax Regs., provides as follows:

(a) *In general.* For purposes of this section, the term "two or more trades or businesses under common control" means any group of trades or businesses which is either a "parent-subsidiary group of trades or businesses under common control" as defined in paragraph (b) of this section, a "brother-sister group of trades or businesses under common control" as defined in paragraph (c) of this section, or a "combined group of trades or businesses under common control" as defined in paragraph (d) of this section. For purposes of this section and sections 11.414(c)–3 and 11.414(c)–4, the term "organization" means as sole proprietorship, a partnership (as defined in section 7701(a)(2)), a trust, an estate, or a corporation.

(b) *Parent-subsidiary group of trades or businesses under common control—*(1) *General.* The term "parent-subsidiary group of trades or businesses under common control" means one or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization if—

(i) A controlling interest in each of the organizations, except the common parent organization, is owned (directly and with the application of sec. 11.414(c)–4(b)(1), relating to options) by one or more of the other organizations; and

(ii) The common parent organization owns (directly and with the application of sec. 11.414(c)–4(b)(1), relating to options) a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations.

(2) *Controlling interest defined—*(i) *Controlling interest.* For purposes of paragraphs (b) and (c) of this section, the phrase "controlling interest" means:

(A) In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation;

(B) In the case of an organization which is a trust or estate, ownership of an actuarial interest of at least 80 percent of such trust or estate;

(C) In the case of an organization which is a partnership, ownership of at least 80 percent of the profits interest or capital interest of such partnership; and

(D) In the case of an organization which is a sole proprietorship, ownership of such sole proprietorship.

(ii) *Actuarial interest.* For purposes of this section, the actuarial interest of each beneficiary of a trust or estate shall be determined by assuming the maximum exercise of discretion by the fiduciary in favor of such beneficiary. The factors and method prescribed in sec. 20.2031–10 of this chapter (Estate Tax Regulations) for use in ascertaining the value of an interest in property for estate tax purposes shall be used for purposes of this subdivision in determining a beneficiary's actuarial interest.

(c) *Brother-sister group of trades or businesses under common control—*(1) *General.* The term "brother-sister group of trades or businesses under common control" means two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of sec. 11.414(c)–4), singly or in combination, a controlling interest of each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.

groups.[8] Therefore, the employees of the partnership and the association are not required by section 414(c) to be aggregated for purposes of sections 401 and 410(b)(1).

Petitioner contends that section 414(c) was intended to be the exclusive test for determining whether the employees of a related business entity should be considered in applying the antidiscrimination provisions. In the alternative, petitioner contends that even if section 414(c) was not intended to supplant prior law on this point, the association nevertheless does not control the partnership employees under the principles set forth in *Thomas Kiddie, M.D., Inc. v. Commissioner*, 69 T.C. 1055, 1060–1061 (1978).

Respondent, on the other hand, maintains that section 414(c) was not intended to be the exclusive test for determining whether the employees of affiliated entities should be aggregated for section 401 purposes. He then asks us to overrule our opinion in *Thomas Kiddie, M.D., Inc. v. Commissioner, supra,*

---

(2) *Effective control defined.* For purposes of this paragraph, persons are in "effective control" of an organization if—

(i) In the case of an organization which is a corporation, such persons own stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote of such corporation or more than 50 percent of the total value of shares of all classes of stock of such corporation;

(ii) In the case of an organization which is a trust or estate, such persons own an aggregate actuarial interest of more than 50 percent of such trust or estate;

(iii) In the case of an organization which is a partnership, such persons own an aggregate of more than 50 percent of the profits interest or capital interest of such partnership; and

(iv) In the case of an organization which is a sole proprietorship, such persons own such sole proprietorship.

(d) *Combined group of trades or businesses under common control.* The term "combined group of trades or businesses under common control" means any group of three or more organizations, if (1) each such organization is a member of either a parent-subsidiary group of trades or businesses under common control or a brother-sister group of trades or businesses under common control, and (2) at least one such organization is the common parent organization of a parent-subsidiary group of trades or businesses under common control and is also a member of a brother-sister group of trades or businesses under common control.

[8]Petitioner does not belong to a parent-subsidiary group as defined in sec. 11.414(c)–2(b), Income Tax Regs., because the association does not own at least an 80-percent interest in the profits or capital of the partnership. Nor does it belong to a brother-sister group as defined in sec. 11.414(c)–2(c), Income Tax Regs. That regulation requires five or fewer persons to be in effective control of both the association and partnership, taking into account the ownership of each person only to the extent that his ownership is identical with respect to each entity. Effective control with respect to partnerships is defined in sec. 11.414(c)–2(c)(2)(iii), Income Tax Regs., as the ownership of more than a 50-percent interest in profits or capital. Under the constructive ownership rules of sec. 11.414(c)–4(b)(4), Income Tax Regs., Dr. Garland is deemed to own the 50-percent profits interest which the association owns. However, since Dr. Dunn does not own any stock in the association, his interest in the partnership cannot be considered in determining whether he and Dr. Garland have effective control of the partnership. Thus, they do not have effective control because Dr. Garland's constructive interest does not exceed 50 percent. Finally, petitioner does not belong to a combined group as defined in sec. 11.414(c)–2(d), because a combined group must include three or more organizations.

and hold that the employment relationship between the partnership and its employees must be attributed to each partner notwithstanding the possibility that his interest in partnership profits or capital may not exceed 50 percent. We agree with petitioner.

On brief, respondent repeatedly makes the assertion that section 414(c) was not intended to be the exclusive test for employee attribution where affiliated entities are involved. Yet he is unable to advance a single cogent argument in support of that claim. The mere fact that the statute does not explicitly state that it is the exclusive test does not necessarily imply that the reverse is true. We think sections 414(b) and 414(c) were intended to provide a definitive answer to the question of whether the employees of related entities should be aggregated for purposes of evaluating plan discrimination. The accompanying committee report states the following (H. Rept. 93-807, 1974-3 C.B. (Supp.) 285):

*Affiliated employers.*—The committee bill also provides that in applying the coverage test, as well as the antidiscrimination rules, the vesting requirements, and the limitations on and benefits, employees of all corporations who are members of a "controlled group of corporations" (within the meaning of sec. 1563(a)) are to be treated as if they were employees of the same corporation. Thus, if two or more corporations were members of a parent-subsidiary, brother-sister, or combined controlled group, all of the employees of all of these corporations would have to be taken into account in applying these tests. A comparable rule is provided in the case of partnerships and proprietorships which are under common control (as determined under regulations), and all employees of such organizations are to be treated for purposes of these rules as though they were employed by a single person. The committee, by this provision, intends to make it clear that the coverage and antidiscrimination provisions cannot be avoided by operating through separate corporations instead of separate branches of one corporation. For example, if managerial functions were performed through one corporation employing highly compensated personnel, which has a generous pension plan, and assembly-line functions were performed through one or more other corporations employing lower-paid employees, which have less generous plans or no plans at all, this would generally constitute an impermissible discrimination. *By this provision the committee is clarifying this matter for the future.* * * * [Emphasis added.]

It is apparent from the committee report that Congress was aware that prior to the enactment of ERISA it was possible to circumvent the antidiscrimination provisions through the use of related business entities. To safeguard against this possibility, Congress enacted legislation which establishes a straightfor-

ward, objective test for determining whether the employees of affiliated entities should be treated as employed by a single employer. Under this test, the employees will be so treated if the business entities are found to be under common control as defined in regulations based on controlled group principles. In light of this direct congressional response to the employee attribution problem and the express statement of intent to clarify this matter for the future (see H. Rept. 93–807, *supra*), we see no reason to fortify the provisions of section 414(c) with other, more stringent tests such as the one respondent has proposed in the present case. Accordingly, we hold that sections 414(b) and 414(c) are the exclusive means for determining whether employees of related trades or businesses should be aggregated for purposes of applying the antidiscrimination provisions.

Assuming, arguendo, that section 414(c) was not intended to be the exclusive test in this area, we nevertheless think the precedent established in *Thomas Kiddie, M.D., Inc. v. Commissioner, supra*, should govern our decision. The factual situation in *Kiddie* is virtually identical to the facts of this case, except that the taxable years in issue were pre-ERISA. In *Kiddie*, two professional medical corporations had formed a partnership in which each corporation held a 50-percent interest. Respondent issued an adverse determination as to the qualification of the pension plan of one of the corporations because it did not cover the employees of the partnership. We held, however, that for purposes of section 401 the employment relationship between partnership and employee was not to be attributed to an individual partner unless it controlled the partnership.[9] We further held that a partner has control only if he owns more than a 50-percent interest in the partnership (69 T.C. at 1060):

> Generally, attribution of partnership characteristics to a partner does not occur unless that partner controls the partnership. Although there is no universal definition, section 707(b) of subchapter K defines such control for two purposes. Thus, a partner owning more than a 50-percent interest may not recognize a loss which arose in dealings between such partner and the

---

[9]It is well established that whether two parties stand in an employer-employee relationship for purposes of sec. 401 depends primarily on the ability of one party to control the performance of services by the other. See *Edward L. Burnetta, O.D., P.A. v. Commissioner*, 68 T.C. 387, 397 (1977); *Thomas Kiddie, M.D., Inc. v. Commissioner*, 69 T.C. 1055, 1057–1058 (1978); *Packard v. Commissioner*, 63 T.C. 621, 629 (1975).

partnership; and gains realized in such dealings are treated as ordinary income if that partner owns more than an 80-percent interest in the partnership.

These same percentage criteria are statutorily incorporated into the definition of control when dealing with section 179 additional depreciation allowances and section 38 investment credits. *Moradian v. Commissioner*, 53 T.C. 207, 209 (1969). In addition, section 707(b) has been used to elucidate the definition of section 1235(d) related persons when partnerships were involved. *Burde v. Commissioner*, 352 F.2d 995, 1000 (2d Cir. 1965). We find the greater than 50-percent interest test, when such interest is determined with reference to section 267(b) and (c), to be equally applicable in defining control of a partnership for purposes of section 401(a)(3).

[Fn. ref. omitted.]

We think the foregoing reasoning is sound and respondent's arguments to the contrary are unconvincing.[10] Furthermore, we think the enactment of section 414(c) provides additional support for the principle that a partner does not control a partnership unless he owns more than a 50-percent interest therein. The regulations under section 414(c) are required by the statute to be based on the controlled group principles in section 1563(a). As a result, respondent's own regulations under section 414(c) variously define control insofar as partnerships are concerned as the ownership of an interest in profits or capital of either 80-percent or more than 50 percent. See secs. 11.414(c)–2(b)(2)(i)(C) and 11.414(c)–2(c)(2)(iii), Income Tax Regs. Therefore, we find no basis for attributing the employees of a partnership to an individual partner if his ownership interest is less than or equal to 50 percent.

Accordingly, we hold that the employees of the partnership are not to be treated as employees of the association for purposes of testing the association's pension plan under sections

---

[10]Respondent's principal contention is based on the fact that for income tax purposes a partnership is not a separate taxable entity but rather an aggregate of the constituent partners, each of whom must report on his individual return his distributive share of partnership income and expenses pursuant to sec. 702. Reasoning by analogy, respondent argues that we should ignore the partnership entity and attribute the partnership employees to the individual partners regardless of their ownership interest. However, this argument ignores the fact that although a partnership is not a separate entity for income tax purposes, it is nevertheless an economic entity whose business operations are generally controlled by the collective decision-making of the partners. It is this economic entity which hires and controls employees, and not the partners in their individual capacities. Thus, we see no rational connection between the conduit principle of sec. 702 and the employee attribution issue in this case.

401(a)(4) and 410(b)(1). Therefore, the plan qualifies under section 401(a).

*An appropriate decision will be entered.*