## Donald J. and Harriet J. Porter, et al.[1] v. Commissioner of Internal Revenue, Respondent

Docket Nos. 19340-84, 19368-84, 26149-84, 29669-84, 39130-84.     Filed March 5, 1987.

*Lewis M. Porter, Jr.*, for the petitioners.
*Janet A. Engel*, for the respondent

Fay, *Judge*: Respondent determined Federal income tax and excise tax deficiencies as follows:

| Petitioners | Year in issue | Income tax deficiency | Excise tax deficiency |
|---|---|---|---|
| Judge and Mrs. Donald J. Porter | 1980 | $924.00 | $90.00 |
| Judge and Mrs. Arlin M. Adams | 1980 | 687.69 | 76.80 |
| Judge and Mrs. William J. Nealon, Jr. | 1981 | 725.61 | 90.00 |
| Judge and Mrs. Clarence C. Newcomer | 1981 | 846.03 | 105.00 |
| Judge and Mrs. Daniel H. Huyett III | 1981 | 825.00 | [2]90.00 |

The issues for decision are whether petitioners are entitled to deduct amounts contributed to individual retirement accounts (hereinafter IRA's) under section 219 or section

[1]Cases of the following petitioners are consolidated herewith: Arlin M. and Neysa C. Adams, docket No. 19368-84; William J., Jr., and Jean M. Nealon, docket No. 26149-84; Clarence C. and Jane M. Newcomer, docket No. 29669-84; and Daniel H., III, and Mary J. Huyett, docket No. 39130-84.

[2]Petitioners' income tax deficiencies and Judge and Mrs. Porter's excise tax deficiency were raised by respondent in statutory notices of deficiency. The excise tax deficiencies of the remaining petitioners were raised by respondent in amended answers.

220, and whether petitioners are liable for the excise tax of 6 percent that is imposed by section 4973 on "excess contributions" to IRA's.[3]

## FINDINGS OF FACT

Most of the facts have been stipulated and are found accordingly. The stipulations and the exhibits attached thereto are incorporated herein by this reference.

With the exception of Judge and Mrs. Porter, all petitioners filed their petitions herein while residing in Pennsylvania and filed joint income tax returns for the years in issue with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Judge and Mrs. Porter filed their petition herein while residing in South Dakota and filed a joint income tax return for their year in issue with the Internal Revenue Service Center, Ogden, Utah. For the years in issue, Judge Adams was a U.S. Circuit Court judge and all of the remaining judge petitioners were U.S. District Court judges. Pursuant to article III, section 1, of the U.S. Constitution, all of the judge petitioners are entitled to hold office for life during good behavior and to receive a salary which cannot be diminished.

Sections 371 and 372 of title 28 of the United States Code (hereinafter sometimes referred to as the Judicial Code) establish several mechanisms by which a judge or Justice who holds office for life during good behavior (hereinafter article III judge), such as the judge petitioners herein, may separate from regular active service and continue to receive payments from the United States.[4] We will briefly describe each of these mechanisms.

---

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

[4]Our references to secs. 371 and 372 of the Judicial Code are to those sections as in effect during 1980 and 1981. Sec. 372 of the Judicial Code was amended twice by acts with effective dates during 1980 and 1981; Act of October 10, 1980, Pub. L. 96-417, tit. V, sec. 501(9), 94 Stat. 1727, 1742 (effective Nov. 1, 1980), and Act of October 15, 1980, Pub. L. 96-458, sec. 3, 94 Stat. 2035, 2036 (effective Oct. 1, 1981). Neither act substantively affects the portions of sec. 372 of the Judicial Code with which we are concerned. Further, secs. 371 and 372 of the Judicial Code have both been amended subsequent to 1981; Act of April 2, 1982, Pub. L. 97-164, tit. I, sec. 112, 96 Stat. 25, 29, and Act of July 10, 1984, Pub. L. 98-353, tit. I, sec. 107, and tit. II, sec. 204(a), 98 Stat. 333, 342, 350. Our decision is not affected by these amendments.

Pursuant to section 371(a) of the Judicial Code, an article III judge who is at least 70 years of age and has served at least 10 years may resign and continue to receive the salary he was receiving at the time of his resignation for the rest of his life. A resigned article III judge no longer holds office[5] and can no longer perform judicial services.[6]

An article III judge who is at least 70 years of age and has served at least 10 years or who is at least 65 years of age and has served at least 15 years may retire and continue to receive the salary of the office[7] for the rest of his life pursuant to section 371(b) of the Judicial Code. A retired article III judge continues to hold office[8] and continues to perform judicial services as he is willing and able to do so.[9]

Pursuant to section 372(a) of the Judicial Code, an article III judge who is permanently disabled and has served at least 10 years may retire and continue to receive the salary of the office for the rest of his life, and an article III judge who is permanently disabled and has served less than 10 years may retire and continue to receive one-half the salary of the office for the rest of his life. A voluntarily retired disabled article III judge continues to hold office[10] and continues to perform judicial services as he is willing and able to do so.[11]

---

[5]The resignation provision for judges was first enacted in 1869. Act of Apr. 10, 1869, ch. 22, sec. 5, 16 Stat. 44, 45. The 1869 Act clearly provided that the resigning judge resign "his office." The words "his office" were removed from the resignation provision in 1948. Act of June 25, 1948, ch. 646, 62 Stat. 869, 903. However, the report which accompanied the 1948 Act clearly states that "Resignation results in loss of the judge's office." H. Rept. 308, 80th Cong., 1st Sess. A47 (1947), reprinted in 28 U.S.C.A. sec. 371, Historical and Revision Notes (West 1968) (hereinafter H. Rept. 308).

[6]Since resigned art. III judges do not retain their office (see note 5 *supra*), it is readily apparent that they can no longer perform judicial service. "Judicial acts would be illegal unless he who performed them held the office of judge." *Booth v. United States*, 291 U.S. 339, 350 (1933).

[7]Salary of the office means the salary paid to judges in regular active service on the court from which an art. III judge has retired. H. Rept. 308. Accordingly, a retired art. III judge continues to receive pay increases, whereas a resigned art. III judge does not.

[8]Sec. 371(b) of the Judicial Code. *Booth v. United States, supra.*

[9]28 U.S.C. sec. 294(b) (1982).

[10]Sec. 372(a) of the Judicial Code, unlike sec. 371(b) of the Judicial Code, does not specifically state that the judge retiring under such provision will continue to hold office. However, 28 U.S.C. sec. 294(b) (1982) allows voluntarily retired disabled art. III judges to continue to perform judicial services. Since such judicial services would be illegal unless the voluntarily disabled judges continued to hold office (*Booth v. United States, supra*), it follows that such judges must continue to hold office.

[11]28 U.S.C. sec. 294(b) (1982).

An article III judge who is permanently disabled is not required to retire pursuant to section 372(a) of the Judicial Code. Pursuant to section 372(b) of the Judicial Code, a disabled article III judge's failure to retire under section 372(a) of the Judicial Code may, under certain circumstances, give rise to an appointment by the President of an additional judge to the court on which the unretired disabled judge sits.[12] However, the failure to retire and the appointment of an additional judge will not affect an unretired disabled article III judge's right to continue to hold office[13] or his right to continue to receive the salary of the office for life during good behavior.[14]

Each judge petitioner established an IRA to which he made timely cash contributions which, if deductible, were not in excess of the applicable limits for the years of the contributions. Respondent disallowed each deduction and determined (or asserted, see note 2 *supra*) income and excise tax deficiencies for the years and in the amounts previously indicated.

## OPINION

Section 219 allows an individual a deduction for amounts paid in cash to an IRA for the benefit of such individual. Section 220 allows an individual a deduction for amounts paid in cash to an IRA for the benefit of such individual and his spouse. Respondent claims that petitioners are not entitled to their claimed IRA deductions because of section 219(b)(2)(A)(iv) and section 220(b)(3)(A)(iv).[15] These sections disallow the deduction in a taxable year in which any person for whose benefit the IRA was established is an "active participant" in "a plan established for its employees

---

[12]Under sec. 372(b) of the Judicial Code, the President, with the advice and consent of the Senate, may appoint an additional judge to the court on which an unretired disabled judge sits if the President receives a properly executed certificate of disability, finds that the unretired disabled judge is unable to discharge efficiently all the duties of the office, and determines that the appointment of an additional judge is necessary for the efficient dispatch of business.

[13]U.S. Const. art. III, sec. 1; Opinion of the Comptroller General, 44 Comp. Gen. 544 (1965).

[14]U.S. Const. art. III, sec. 1; Opinion of the Comptroller General, 44 Comp. Gen. 544 (1965).

[15]Respondent has stated that he places no reliance on sec. 219(b)(2)(A)(i) or sec. 219(b)(3)(A)(i), which disallow an IRA deduction where an individual for whose benefit the IRA is established is an active participant in a plan described in sec. 401(a). Cf. Rev. Rul. 61-218, 1961-2 C.B. 102 and News Release IR-1869 (Aug. 10, 1977).

552

by the United States."[16] As a result of stipulations,[17] our inquiry with respect to the deductibility of the IRA contributions is limited to determining whether the judge petitioners were active participants in a plan established by the United States for its employees.

As indicated in the findings of fact, several mechanisms exist whereby article III judges can continue to receive payments from the United States after separation from regular active service. Before considering whether such mechanisms are "plans" within the meaning of section 219(b)(2)(A)(iv) or whether the judge petitioners were "active participants" therein, we will first consider whether article III judges are "employees" of the United States. If article III judges are not employees, section 219(b)(2)(A)(iv) will not apply because the article III judges would not be active participants in a plan established by the United States for its *employees*.

---

[16]During the years at issue, sec. 219(b)(2)(A)(iv) read as follows:

(2) *** Nó deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year—
    (A) he was an active participant in—

          *       *       *       *       *       *       *

        (iv) a plan established for its employees by the United States, by a State or political
        subdivision thereof, or by an agency or instrumentality of any of the foregoing, ***
During the years at issue, sec. 220(b)(3)(A)(iv) read as follows:

(3) *** No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year—
    (A) he or his spouse was an active participant in—

          *       *       *       *       *       *       *

        (iv) a plan established for its employees by the United States, by a State or political
        subdivision thereof, or by an agency or instrumentality of any of the foregoing, ***

Effective for taxable years beginning after Dec. 31, 1981, the Economic Recovery Tax Act of 1981, sec. 311(a) and (e), Pub. L. 97-34, 95 Stat. 172, 274, 280, amended sec. 219 and repealed sec. 220, the effect of which was to allow individuals (and their spouses) to deduct amounts contributed to IRA's for their benefit, regardless of whether such individuals (or their spouses) were participants of any of the proscribed plans. Effective for tax years beginning after Dec. 31, 1986, the Tax Reform Act of 1986, sec. 1101(a)(1), Pub. L. 99-514, 100 Stat. 2085, 2411, amended sec. 219, the effect of which is to phase out the IRA deduction for individuals (and their spouses) who earn above specified amounts where such individuals (or their spouses) are active participants of certain proscribed plans, one of which is a "plan established for its employees by the United States, by a State or political subdivision thereof, or by an agency or instrumentality of any of the foregoing."

Since the relevant portions of secs. 219 and 220 during the years at issue are identical, we will refer only to sec. 219.

[17]The parties have stipulated that the IRA's in issue are of a type described in sec. 408(a), a necessary element for the deduction of contributions thereto, and that Mrs. Newcomer was not an active participant in any plan described in sec. 220 (b)(3)(A).

In determining whether article III judges are employees within the meaning of section 219, we must determine which definition of employees should be utilized. There are various definitions of employee and the results obtained under the various definitions may differ. Under the definition of employee generally used with respect to the organization of the Federal Government, article III judges are clearly employees of the United States. 5 U.S.C. sec. 2105 (1982). However, under the definition of employee for purposes of Civil Service retirement, article III judges are clearly not employees of the United States. 5 U.S.C. sec. 8331(l) (1982). Our reference to these two definitions should not be taken to imply that one or the other is applicable to the situation presented. In fact, as will be seen below, neither definition is herein applicable. We here seek the proper definition of employee for purposes of section 219.

In ascertaining the proper definition of employee for purposes of section 219, we will look to other Internal Revenue Code sections with a similar purpose. See *Rowan Cos. v. United States*, 452 U.S. 247 (1981). Participants in qualified retirement plans enjoy contributions of before-tax earnings to a retirement fund which can earn income, tax free. Secs. 402(a), 501(a), and sec. 1.402(a)-1(a)(i), Income Tax Regs. Prior to the enactment of sections 219 and 408, individuals who worked for organizations which had not established qualified retirement plans did not enjoy such favorable tax treatment with respect to providing for their retirement income. Section 219, which was added by the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829 (1974) (hereinafter ERISA), allows a deduction, subject to a maximum dollar limitation, of contributions to an IRA. Such a deduction is equivalent to a contribution of before-tax earnings. Section 408, also added by ERISA, allows an IRA to earn income, tax free. Thus, after the passage of sections 219 and 408, even those individuals who work for organizations which have not established a qualified retirement plan may provide for their retirement income with before-tax earnings which can earn income, tax free.

Section 219, in conjunction with section 408, establishes, on an individual basis, plans which are in purpose and effect

similar to qualified retirement plans. Where different sections of the Internal Revenue Code have the same purpose and use a common term, the common term should be defined in the same manner in each such section. *Rowan Cos. v. United States, supra.* Accordingly, we hold that "employee" is defined for purposes of section 219 as it is defined for purposes of the qualified retirement plans.

A close examination of the text of section 219 indicates that such a definition of employee is appropriate. The flush language of section 219(a) provides that contributions made by an employer to an IRA for the benefit of an employee are compensation to the employee.[18] Parenthetically this provision is made inapplicable to those persons who are employees as specifically defined in section 401(c)(1). Unless Congress intended that the qualified retirement plan definition of employee be used for section 219, there would be no need to except from employee, as used in section 219, a subset of qualified retirement plan employees. This is particularly true where the qualified retirement plan employees excepted, certain self-employed individuals, would not be considered employees outside the context of qualified retirement plans.

The definition of "employee" for purposes of qualified retirement plans is the common law definition of "employee." *Lloyd M. Garland, M.D., F.A.C.S., P.A. v. Commissioner*, 73 T.C. 5, 13 n. 9 (1979); *Edward L. Burnetta, O.D., P.A. v. Commissioner*, 68 T.C. 387, 397 (1977); *Packard v. Commissioner*, 63 T.C. 621, 629 (1975).[19] Accordingly, we hold that the common law definition of employee shall be utilized for purposes of section 219.

In determining the existence of a common law employer-employee relationship, "the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be

---

[18]During the years in issue, the flush language of sec. 219(a) read as follows:

For purposes of this title, any amount paid by an employer to such a retirement account or for such a retirement annuity or retirement bond constitutes payment of compensation to the employee (other than a self-employed individual who is an employee within the meaning of section 401(c)(1)) includible in his gross income, whether or not a deduction for such payment is allowable under this section to the employee after the application of subsection (b).

[19]Respondent, in his revenue rulings, has agreed that the common law definition of employee should be used in connection with qualified retirement plans. See Rev. Rul. 79-101, 1979-1 C.B. 156, and Rev. Rul. 68-303, 1968-1 C.B. 165.

performed and the means to be employed in its accomplishment, as well as the result to be obtained." *Reed v. Commissioner*, 13 B.T.A. 513 (1928), revd. 34 F.2d 263 (3d Cir. 1929), revd. per curiam 281 U.S. 699 (1930). Though nearly 60 years have passed since the Board of Tax Appeals rendered its decision in *Reed*, the right to control is still the "master test." *Azad v. United States*, 388 F.2d 74, 76 (8th Cir. 1968), and cases cited therein.

Most cases applying the common law definition of "employee" have done so to determine whether an individual was an employee or an independent contractor. *Thomas Kiddie, M.D., Inc. v. Commissioner*, 69 T.C. 1055 (1978); *Ellison v. Commissioner*, 55 T.C. 142 (1970); *James v. Commissioner*, 25 T.C. 1296 (1956); *Hand v. Commissioner*, 16 T.C. 1410 (1951). A third and more applicable classification exists, that of officer. The Supreme Court recognized these three classifications in *Metcalf & Eddy v. Mitchell*, 269 U.S. 514 (1926). There, the Supreme Court was asked to decide whether the taxpayers then before it were officers, employees, or independent contractors of States. The taxpayers were engineers that had performed consulting services for States and their status with respect to such States was relevant because State officers and State employees were exempt from the Federal tax at issue, whereas State-hired independent contractors were not.

The Court first considered whether the taxpayers were officers of the States for which they performed services. The Court concluded that the taxpayers were not officers of the States because they had not taken an oath of office, they were free to concurrently provide services to others, the services they performed were not permanent and continuous in character, and the services they performed were prescribed by contract, as opposed to statute. In so concluding, the Court stated, "There were lacking in each instance the essential elements of a public station, permanent in character, created by law, whose incidents and duties were prescribed by law." *Metcalf & Eddy v. Mitchell, supra* at 520. The Court further noted that only those officers delegated a portion of the State government's sovereign powers were exempt from Federal income tax. *Metcalf & Eddy v. Mitchell, supra* at 522.

The Court then determined that the taxpayers were not employees of the States for which they performed their services, stating:

The record does not reveal to what extent, if at all, [the taxpayers'] services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor. [*Metcalf & Eddy v. Mitchell, supra* at 520-521.]

The Court ultimately concluded that the taxpayers were independent contractors of the States for which they performed services and held that the taxpayers were liable for the tax at issue. This case clearly illustrates that a dichotomy exists, not only between employees and independent contractors, but between employees and officers as well.

In *Pope v. Commissioner*, 138 F.2d 1006 (6th Cir. 1943), the Sixth Circuit had to determine whether a taxpayer who performed services for the State of Tennessee was an officer or employee of Tennessee, and as such exempt from Federal income taxation under the Public Salary Tax Act of 1939, 53 Stat. 574-577. The taxpayer was appointed by the Governor of Tennessee, pursuant to a public act of the Tennessee General Assembly, to control, supervise, and direct an investigation of certain State functions and acts. The Tennessee act, pursuant to which the taxpayer was appointed, required that the appointee be a lawyer; gave the appointee authority to appoint assistants and aids; provided that the appointee take a prescribed oath; authorized the appointee to issue subpoenas for witnesses, to administer oaths, and to compel the attendance of witnesses; and declared that witnesses swearing falsely were guilty of perjury. The Sixth Circuit listed the five "indispensible" elements of an office:

(1) It must be created by the Constitution or the Legislature, or by a municipality or other body with authority conferred by the Legislature. (2) There must be a delegation of a portion of the sovereign powers of

government to be exercised for the benefit of the public.[20] (3) The powers conferred and the duties to be discharged must be defined either directly or indirectly by the Legislature or through legislative authority. (4) The duties must be performed independently and without control of a superior power other than the law. (5) The office must have some permanency and continuity and the officer must take an official oath. [*Pope v. Commissioner, supra* at 1009.]

The Sixth Circuit concluded that all five of these elements were present and, accordingly, that the taxpayer was an officer of the State of Tennessee.

The Sixth Circuit's list contains an element not mentioned in *Metcalf & Eddy v. Mitchell, supra,* i.e. that the officer be free of control by any superior power other than the law. Where all other elements of the definition of officer are otherwise met, an individual is an officer whether or not subject to such control. In such a situation, if the individual is subject to control by a superior power other than the law, the individual is both an officer and an employee, whereas, if no such control exists, he is an officer, but not an employee. See *Buckley v. Valeo,* 424 U.S. 1, 126 n. 162 (1976).

In *Buckley v. Valeo, supra,* various Federal officeholders, Federal candidates, and supporting political organizations brought suit against, *inter alia,* the Federal Election Commission (hereinafter the FEC), attacking the constitutionality of the Federal Election Campaign Act of 1971, 86 Stat. 3 (1971), as amended by the Federal Election Campaign Act Amendments of 1974, 88 Stat. 1263 (1974) (hereinafter both collectively referred to as the FEC Act). One of the issues before the Court was whether the members of the FEC were officers of the United States. If they were, their appointments would have to be in compliance with the appointments clause of the U.S. Constitution. U.S. Const. art. II, sec. 2.

---

[20]We recognize that this element of the definition of "office" had its genesis in cases considering the purpose of the exemption from Federal income tax allowed State officers. See *Helvering v. Powers,* 293 U.S. 214 (1934); *The Collector v. Day,* 78 U.S. (11 Wall.) 113 (1870). However, the element has been recognized in other areas as well. See *Green v. Bookwalter,* 207 F. Supp. 866 (W.D. Mo. 1962) (commissioner appointed by mayor did not hold a "public office" for purposes of sec. 7701(a)(20) where the commissioner was not delegated any portion of the city's sovereign powers). Since art. III judges quite clearly have been delegated a portion of the United States' sovereign powers, i.e., the judicial power, we need not decide whether this element is "indispensible" as it was characterized by the Sixth Circuit in *Pope v. Commissioner,* 138 F.2d 1006 (6th Cir. 1943).

The FEC was charged with record keeping, disclosure, and investigative duties with respect to certain political activities. It had extensive rule-making, adjudicative, and enforcement powers. In determining whether the members of the FEC were officers of the United States, the Court utilized a definition similar to the one utilized in *Metcalf & Eddy v. Mitchell, supra,* and *Pope v. Commissioner, supra.*[21] The Court held that the members of the FEC were officers of the United States but were not employees of the United States. In so holding, the Court made the following footnote comment:

"Officers of the United States" does not include *all* employees of the United States, but there is no claim made that the [members of the FEC] are employees of the United States rather than officers. Employees are lesser functionaries subordinate to officers of the United States, see *Auffmordt v. Hedden,* 137 U.S. 310, 327 (1890); *United States v. Germaine,* 99 U.S. 508 (1879), whereas the [members of the FEC], appointed for a statutory term, are *not subject to the control or direction of any other executive, judicial, or legislative authority.* [*Buckley v. Valeo,* 424 U.S. at 126 n. 162. Emphasis added.]

This comment clearly indicates that there is an overlap between officers of the United States and employees of the United States (" 'Officers of the United States' does not include *all* employees of the United States"), and that those officers not subject to direction and control of any executive, judicial, or legislative authority, are not employees. The Court ultimately held that several of the members of the FEC were appointed in violation of the appointments clause.

We will consider the duties and powers of the judge petitioners, vis-à-vis the United States, to determine if they are officers, employees, or officers and employees. Their positions are created by the Constitution and statutes of the United States. U.S. Const. art. III, sec. 1; 28 U.S.C. sec. 44(a) (1982); 28 U.S.C. sec. 133 (1982). They are appointed by the President with the advice and consent of the Senate. U.S. Const. art. II, sec. 2; 28 U.S.C. sec. 44(a) (1982); 28

---

[21]The Court actually defined "officer" as a holder of an office under the Government established by the Constitution. *Buckley v. Valeo,* 424 U.S. 1, 125-126 (1976). However, its reliance on *United States v. Germaine,* 99 U.S. 508 (1878), and its reference to *Auffmordt v. Hedden,* 137 U.S. 310, 327 (1890), indicates that it considered factors similar to those considered in *Metcalf & Eddy v. Mitchell,* 269 U.S. 514 (1926), and *Pope v. Commissioner,* 138 F.2d 1006 (6th Cir. 1943).

U.S.C. sec. 133(a) (1982). They, along with all other article III judges, are vested with the judicial power of the United States. U.S. Const. art. III, sec. 1. The powers and duties of article III judges are fixed by the Constitution and statutes passed by the U.S. Congress. U.S. Const. art. III, sec. 1; U.S. Const. art. III, sec. 2; 28 U.S.C. sec. 44(c) (1982) (duty to reside within circuit to which appointed); 28 U.S.C. sec. 46 (1982) (duty to sit on court and its panels); 28 U.S.C. sec. 48 (1982) (duty to hold regular sessions in particular places and power to hold special sessions; power to transact all business at special sessions); 28 U.S.C. sec. 49 (1982) (duty to serve, when appointed, on the U.S. Court of Appeals for the District of Columbia for the purpose of appointing independent counsel); 28 U.S.C. sec. 134(b) and (c) (1982) (duty to reside within district to which appointed and duty to reside near courthouse); 28 U.S.C. sec. 137 (1982) (division of duties among the judges of a district); 28 U.S.C. sec. 140(a) (1982) (power to adjourn session); 28 U.S.C. sec. 141 (1982) (power to hold special sessions; power to transact all business at special sessions); 28 U.S.C. secs. 291 and 292 (1982) (power to serve, when appointed, on other courts); 28 U.S.C. sec. 294 (1982) (power of "retired" judges to serve, when appointed, subject to their willingness and ability); 28 U.S.C. sec. 296 (1982) (power and duty to discharge all judicial duties when assigned); 28 U.S.C. secs. 332 and 333 (1982) (duty to attend certain judicial meetings); 28 U.S.C. sec. 452 (1982) (power of judge to perform judicial functions at any time, whether court is or is not in session); 28 U.S.C. sec. 459 (1982) (power to administer oaths and take acknowledgments); 28 U.S.C. sec. 2071 (1982) (power to prescribe court rules). The tenure of article III judges is life during good behavior. U.S. Const. art. III, sec. 1; 28 U.S.C. sec. 44(b) (1982); 28 U.S.C. sec. 134(a) (1982). They are required to take a prescribed oath of office. 28 U.S.C. sec. 453 (1982). They may be removed only by way of impeachment, and they can be impeached only for treason, bribery, or other high crimes and misdemeanors. U.S. Const. art. II, sec. 4. See also *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 16 (1955); *United States v. Isaacs*, 493 F.2d 1124, 1142 (7th Cir. 1974). They receive a salary which cannot be diminished. U.S. Const. art. III, sec. 1. The constitutional

grant of life tenure during good behavior and an undiminishable salary "were designed to give [article III] judges maximum freedom from possible coercion or influence by the executive or legislative branches of the government." *United States ex rel. Toth v. Quarles, supra* at 16. Our research, as aided by the parties,[22] does not indicate that article III judges are subject to control by any superior authority other than the Constitution and laws of the United States.

In our opinion, article III judges are officers of the United States. All of the elements for such status are here present: the creation of their office by the Constitution; the delegation to them of a part of the sovereignty of the United States, i.e., the judicial power; the defining of their powers and duties by the Constitution and statute; the independent discharge of their duties; the continuity of their office; and their taking of an oath of office. See *Meredith v. Van Oosterhout*, 286 F.2d 216 (8th Cir. 1960), and *Martin v. Wyzanski*, 191 F. Supp. 931 (D. Mass. 1961) (a U.S. Circuit Court judge and a U.S. District Court judge, respectively, were "officers of the United States" for purposes of 28 U.S.C. sec. 1442(a)(1) (1982) removal jurisdiction). Particularly relevant is the article III judges' independent discharge of their duties. Because they are not subject to any superior authority other than the law, they are officers exclusively, as opposed to officers and employees of the United States. *Buckley v. Valeo*, 434 U.S. at 126 n. 162.

In holding that article III judges are not common law employees of the United States, we are cognizant of the several Federal income tax provisions utilizing the common law definition of employee. Sections 3401, et seq. (hereinafter the "withholding provisions") provide for the collection of income tax at the source on "wages." "Wages" is defined as remuneration for services performed by an "employee." Sec. 3401(a). "Employee" is defined as a common law employee. Sec. 31.3401(c)-1, Employment Tax Regs. Article III judges are subject to the withholding provisions because, for purposes of the withholding provisions, officers of the United States are treated as employees. Sec. 3401(c).

---

[22]The parties, by order of this Court, were required to and did submit supplemental briefs on the issue of whether art. III judges are common law employees of the United States.

The withholding provisions are entirely consistent with our holding in that they recognize that the common law definition of employee is not sufficiently broad enough to cover officers of the United States.

Sections 1401, et seq. (hereinafter the self-employment income tax provisions) impose a tax on "self-employment income." "Self-employment income" is defined, subject to an annual minimum and maximum, as the gross income derived by an individual from a "trade or business." Sec. 1402(a) and (b). For purposes of the self-employment income tax provisions, the performance of the functions of a public office and the performance of services as an employee are not considered trades or businesses. Sec. 1402(c)(1) and (2). The common law definition of employee is utilized for purposes of the self-employment income tax provisions. Sec. 1.1402(c)-3(a), Income Tax Regs. Article III judges are not required to pay the self-employment income tax because they perform the functions of a public office. Sec. 1402(c)(1). The regulations specifically refer to judges as individuals who perform the functions of a public office. Sec. 1.1402(c)-2(b), Income Tax Regs. The self-employment income tax provisions are entirely consistent with our holding in that they, like the withholding provisions, recognize that the common law definition of employee is not broad enough to cover officers of the United States.

Sections 3301, et seq. (hereinafter the unemployment tax provisions) require employers to pay a tax equal to a percentage of the remuneration paid with respect to "employment." "Employment" is defined as, inter alia, any service performed by an "employee." Sec. 3306(c). Excepted from the definition of employment is "service performed in the employ of the United States." Sec. 3306(c)(6). The common law definition of employee is utilized for purposes of the unemployment tax provisions. Sec. 3306(i). The remuneration paid to article III judges is not subject to the unemployment tax. They are not employees, they perform no services as employees, and the remuneration that they receive is not with respect to employment. Accordingly, the unemployment tax provisions are not inconsistent with our holding. That the remuneration paid to employees of the

United States is also not subject to the unemployment tax is of no moment.

Sections 3101, et seq. (hereinafter the employment tax provisions) impose a tax on employers and employees equal to a percentage of the remuneration paid and received with respect to "employment." Analysis of these provisions during the years in issue is very similar to the analysis of the unemployment tax provisions. "Employment" was defined as service performed by an "employee." Sec. 3121(b). Excepted from the definition of employment was "service performed in the employ of the United States * * * if such service is covered by a retirement system established by a law of the United States."[23] Sec. 3121(b)(6). The common law definition of employee was utilized for purposes of the employment tax provisions. Sec. 3121(d)(2). The remuneration paid article III judges was not subject to the employment tax during the years at issue. They were not employees, they performed no services as employees, and the remuneration they received was not with respect to employment. Accordingly, the employment tax provisions were not, during the years at issue, inconsistent with our holding. That the remuneration paid to employees of the United States covered by a retirement system established by a law of the United States was also not subject to the unemployment tax is of no moment.[24]

The term "employee" is used in many other sections of the Code as well. Though we would like to consider them all in an effort to show that they are consistent, not inconsistent, or inapposite to our holding, further consideration is

---

[23]The analysis of the employment tax provisions here differs slightly from the analysis of the unemployment tax provisions as the exception for service performed in the employ of the United States further requires that the service be covered by a retirement system established by a law of the United States.

[24]We note that amendments made to the employment tax provisions subsequent to the years in issue have been interpreted in a manner inconsistent with our holding. See sec. 278(a)(1) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 559 (sec. 3121(u) was added to the Code, the effect of which was interpreted as subjecting art. III judges' remuneration to a portion of the employment taxes effective for remuneration paid and received after Dec. 31, 1982), and sec. 101(b)(1) of the Social Security Amendments of 1983, Pub. L. 98-21, 97 Stat. 65, 69, and sec. 2601(b)(1) and (2) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 1124 (both amending sec. 3121(b) of the Code, the effect of which was interpreted as subjecting art. III judges' remuneration to the employment taxes effective for remuneration paid and received after Dec. 31, 1983). Since these amendments are effective only for years subsequent to the years in issue, we do not feel compelled to resolve the inconsistencies thereby created.

not here warranted. Suffice it to say that the term "employee" as used in the withholding provisions, the self-employment income tax provisions, the unemployment tax provisions, and the employment tax provisions, as in effect during the years at issue, are consistent or not inconsistent with our holding.

Since article III judges are not common law employees, they are not employees of the United States within the meaning of section 219. As such, they are not covered by a plan established by the United States for its *employees* and, therefore, section 219(b)(2)(A)(iv) is not applicable to disallow petitioners' claimed IRA deductions.[25] Accordingly, we hold that the petitioners are entitled to their claimed IRA deductions.[26]

In closing, we note that even were we to have held that article III judges are employees of the United States, we would not readily conclude that they were not entitled to their claimed IRA deductions. "Plan" as used in section 219(b)(2)(A)(iv) refers to a retirement plan. Sec. 1.219-1(b)(2)(A)(iv), Income Tax Regs. Under two of the mechanisms whereby article III judges separate from regular active service and continue to receive payments from the United States, i.e., sections 371(b) and 372(a) of the Judicial Code, article III judges only technically retire as they may and often do continue to perform the same functions they performed prior to separation from regular active service. Thus, the payments article III judges receive pursuant to sections 371(b) and 372(a) of the Judicial Code are not of the same nature as payments retired employees receive pursuant to a retirement plan where the retired employees actually cease to perform services. Under a third mechanism, i.e., section 372(b) of the Judicial Code, the "retired" judges' right to continued payments is granted by the Constitution. See Opinion of the Comptroller General, 44 Comp. Gen. 544 (1965). We do not consider this constitutional right to be a retirement plan. Finally, under the fourth mechanism, i.e., section 371(a) of the Judicial Code,

---

[25] We likewise hold that sec. 220(b)(3)(A)(iv) is not applicable to disallow petitioners' claimed IRA deductions. See note 16 *supra*.

[26] Since there is a complete absence in the legislative history of sec. 219 as to whether art. III judges were to be allowed the benefits of IRA contributions, we cannot speculate as to how Congress would have resolved this issue. We take the statutute as we find it.

article III judges no longer perform the services they performed during regular active service. A predecessor of this provision, however, has been held not to be in the nature of a pension, but rather an inducement to superannuated judges to voluntarily relinquish their offices. *Johnson v. United States*, 79 F. Supp. 208 (Ct. Cl. 1948). Accordingly, it does not appear that sections 371 and 372 of the Judicial Code establish a retirement plan.

Further, the purpose of section 219(b)(2)(A) was to prevent individuals from receiving a double tax benefit. See H. Rept. 93-807 (1974); and *Chapman v. Commissioner*, 77 T.C. 477, 480 n. 4 (1981). ("The double tax benefit which Congress sought to preclude was of course the potential for an individual to obtain the tax benefit provided by being a participant in a qualified plan as well as the tax benefit permitted to those making contributions to an IRA.") Cf. *Eanes v. Commissioner*, 85 T.C. 168 (1985). Although petitioners do receive tax benefits with respect to their contributions to their IRA's, they do not receive tax benefits with respect to the provisions allowing for continuation of payments after separation from regular active service. Unlike the payments a retired employee receives from a trust established pursuant to a qualified retirement plan, the payments an article III judge receives pursuant to sections 371 and 372 of the Judicial Code are not made from a fund established by contributions of before-tax earnings which can grow tax free. Rather the payments are made from current congressional appropriations and are administered in a manner identical to the manner in which the payments to article III judges in regular active service are administered. Accordingly, petitioners are not here receiving the double tax benefit Congress sought to prevent by section 219(b)(2)(A).

Having decided that petitioners are entitled to their claimed IRA deductions, we hold that petitioners are not subject to the section 4973 excise tax.

*Decisions will be entered for the petitioners.*